## HARDEN v. LANG.

1. When two parties enter into a contract for different articles of machinery which all together constitute an outfit for ginning cotton, for a gross price, the contract is an entire one, and a breach of it is caused by a failure to deliver any separate article of the machinery named. When a breach is so occasioned, the purchaser has a right to rescind the contract on notification and return of the articles which he has received, or he may, at his pleasure, abide by the contract and have a right of action to recover damages for the breach; but he can not do both. When, after such breach, he not only retains the articles received, but puts them to his own use and notifies the seller that he has purchased elsewhere the part of the machinery contracted for but not delivered, this is equivalent to an election to abide by the terms of the original contract, and he thereafter holds under those terms the articles received.

2. A claim for damages arising from a breach of a contract can not be allowed under a plea of recoupment in defense to an action of trover, unless some special intervening equity arises in favor of the defendant, such as insolvency or non-residence of the plaintiff.

Argued February 7,—Decided April 6, 1900.

Trover. Before Judge Henry. Burke superior court. April term, 1899.

*Phil. P. Johnston,* for plaintiff in error.
*Rawlings & Hardwick* and *Lawson & Scales,* contra.

LITTLE, J. Harden purchased from Lang certain machinery. The contract between them is embodied in an order of which the following is a copy:

"Louisville, Georgia, July 31, 1897. S. G. Lang, Sandersville, Georgia. Please ship as early as possible the following described machinery: One 8 H. P. portable Ajax engine, mounted on four iron wheels, speeded to 225 small pulley 30 by 8, Pemberta injector, one sixty-saw Pratt gin, with condenser, Driving pulley 16 by 9; for which I agree to pay the sum of . . . one half October 15th, 1897, one half October 1st, 1898. Last note to draw 8% interest from September 1st. Ship condenser only to Keyesville, Ga. F. O. B. Waynesboro, Ga. This order is made with the distinct understanding that the title to the said property is to remain in the said S. G. Lang until the purchase-money to said property and all other

expenses incurred in the collection of the same shall be fully paid, and hereby agree to sign and execute all notes, as per contract above, upon arrival of machinery, and it is understood that these notes shall embody the above understanding. Ship released, and insure, if by water. This contract covers my understanding in full, and there exists no verbal agreement. To be delivered by September 1st, 1897.. Shipping point Waynesboro. Post-office, Oats, Ga.        R. A.. Harden."

All the machinery was delivered, and received by Harden, according to contract, except the cotton-gin, which was promised to follow the shipment of the other articles in a few days. On the 23d of September, finding that his efforts to obtain the the gin were unavailing, Harden purchased another gin and telegraphed that fact to the defendant in error; in consequence of which the gin originally contracted for was never shipped. Harden put in place and used the machinery which he purchased from Lang in connection with the gin which he procured elsewhere, and the same was in his possession and being so used when the first of the notes became due under the contract. The defendant in error requested Harden to pay him the value of the machinery which he had received. This Harden declined to do. He then instituted an action of trover to recover the engine, fixtures, and other machinery which Harden so received. To this action Harden filed several pleas, among them one to the effect that, by reason of the failure of Lang to ship the gin, the reservation of title to the other property named in the contract became null and void, and therefore Lang was not entitled to recover. He further averred that the contract was an entire one; that he purchased the machinery as a plant to establish a cotton-ginnery, with the object of ginning not only his own cotton but that of the public generally, all of which was well known to Lang; that anticipating the prompt delivery of the machinery, he had entered into contracts with various farmers to gin their cotton for a consideration of $1.50 per bale, all of which he lost by the failure to deliver the gin. Other items of damage resulting from such failure were also set forth, all of which he pleaded in the nature of recoupment against the plaintiff's action. The court sustained a demurrer to a part

of the plea, on the ground that the damages claimed were too
vague, remote, and speculative to be recovered.   The court also
ruled that unless the defendant should make proof of the insol-
vency of the plaintiff, who, it was admitted, was a resident of
Washington county in the State of Georgia, the plea of re-
coupment for the damages sustained by the non-delivery of the
gin could not be sustained; and on an admission made by counsel
for the defendant that he was not prepared to make proof of
such insolvency, and on the admission of the receipt of the ma-
chinery which the action was brought to recover, and on proof
of its value, the court directed a verdict for such proved value,
less the amount of freight paid by the defendant, the plaintiff
having elected to take a money verdict.   To the rulings which
sustained the demurrer and directed the verdict, the defendant
excepted.

1. There can be no doubt that the contract entered into be-
tween the parties is, by its terms, an entire one and not divisible.
While there were several articles of machinery contracted for,
they were all articles purchased to be used in one business, to
wit, that of ginning cotton, and it required all of them to con-
stitute the plant which Harden proposed to establish; and it
seems that these facts were known to the seller.   No separate
price was put on any of the articles, but Harden agreed to pay a
gross sum for this entire plant. The contract, therefore, was not
by its terms divisible.   In relation to entire contracts, the
Civil Code, § 3643, declares that the whole contract stands or
falls together, and it is further declared that the character of
the contract is determined by the intention of the parties.
Treating this as an entire contract, the failure to deliver the
cotton-gin at the time agreed was a breach; and the question
arises, what remedies or rights accrued to Harden by reason of
that breach?   Under plain principles of law as we understand
them, his rights were threefold in number:   1. If he elected
to treat the breach as a discharge from further performance of
the terms of the contract on his part, he was legally entitled
to do so.   2. If he had done anything under the contract, or
paid out any money in the execution of its terms, he had a
right to sue on a quantum meruit and recover for the same,

this being a cause of action distinct from the original contract but based upon a contract created by law. 3. He had a right of action on the original contract, which he might sustain either by a suit to obtain damages for the loss occasioned by the breach, or a suit to obtain specific performance of the contract. He could not exercise all of these rights, but he was entitled to have any one of them enforced; but if he acquiesced in the breach and did not claim his discharge from the terms of the contract, but chose to go on with it instead of repudiating it, and took a benefit under it, he can only have the right of recovery of damages. Clark on Contracts, 676, and authorities cited in note 177. It was his right originally to have required a delivery of all of the machinery he contracted to purchase, and to have refused to receive any part of it unless the whole was delivered; and we do not mean to say that if a part of it was received on the promise of the seller that the remaining part would also be thereafter immediately furnished, he would not have been justified in receiving the part shipped and waiting a reasonable time for the other part, without losing his right to claim that he was discharged from the terms of the contract. But, in order for such claim to be effectual, it was necessary, not only that he should have made an election whether he would continue under the contract or claim that he was discharged therefrom, in a reasonable time, but he must also have notified the other party and surrendered, or offered to surrender, the articles which he had received. If he desired to rescind the contract for the breach occasioned by the non-delivery of the gin, it was necessary, in any event, that the other party should be notified (28 Ohio St. 10), and this must have been done within a reasonable time, and he must otherwise have done what would have put him and the other party in statu quo, and if he did not do this there was no legal rescission. The rule which prescribes the duty of the party seeking to rescind the contract is, that the one proceeding to rescind must either give back or offer to return whatever of any value to himself or the other he has received under the contract, because there can not be a part affirmance and a part rescission. 93 Ill. 265; 13 Nev. 25; Lane v. Latimer, 41 Ga.

171; *Miller* v. *Cotten,* 5 *Ga.* 341; *Glover* v. *Green,* 96 *Ga.* 126; Civil Code, § 3712. Justice Bleckley, in the case of *Summerall* v. *Graham,* 62 *Ga.* 729, tersely said: "Restitution before absolution is as sound in law as in theology; and that doctrine prevents an *ex parte* rescission by the plaintiff without restoring the defendant to his original situation."

Now, as to the facts of the present case, we find that Harden not only did not return or offer to return the machinery which he had received, but that he retained it and put it in operation in connection with a cotton-gin which he obtained in lieu of the one Lang had agreed to deliver. More than that, on September 23, he telegraphed the fact to Lang that he had purchased a gin elsewhere. The evident meaning of this notification was that Lang need not deliver the gin which was originally embraced in the contract; and while the necessity for the procurement of another gin was undoubtedly caused by the fact that Lang failed to comply with his contract and ship him a cotton-gin, this notification in effect operated as a waiver of the obligation that Lang should thereafter deliver the gin. So that, by the failure to return the machinery which he had already received and the appropriation of it to his own use, as well as by the waiver, it must be held, as a matter of law, that Harden did not elect to rescind; and it follows that, as to the machinery which he received and kept, his rights are to be governed by the terms of the original contract. It would not at all be in accordance with the law governing contracts to hold that, as Harden received the machinery under a particular contract which had been broken by the seller, he could retain possession and use that portion received by him, with no other liability than being under an equitable obligation to pay its value, when the contract he had entered into declared that he should have no title until he had paid for it, because, having, when the breach occurred, different and distinct rights, he elected not to return the machinery but to keep it as his property. It was delivered to him under a particular contract, and in law he must receive it under that contract or not at all. But if he did receive it and keep it, then the terms of the contract became operative as to what he did receive. By that con-

tract Lang retained title to the property which he shipped, in himself; and when Harden received and kept it, necessarily he must hold it on the terms originally agreed to and under which it was delivered to him. But it is argued, inasmuch as only one half of the purchase-money was past due, that even if it were maintainable, an action of trover could not be brought until the time for the payment of the entire purchase-money had elapsed. In the case of *Jones* v. *Snider, 99 Ga.* 276, this court held that a seller of personal property, who had reserved title in himself, could, even after obtaining a judgment against the buyer for the price and collecting a portion of the same, without canceling the judgment or paying or tendering back what had been received, maintain against the buyer an action of trover for the purpose of collecting the balance of the purchase-money; citing *Dykes* v. *McVay, 67 Ga.* 502; *Bowen* v. *Frick & Co., 75 Ga.* 786. See also *Guilford, Wood & Co.* v. *McKinley, 61 Ga.* 230; *Hill* v. *Winn, 60 Ga.* 337. An action of trover raises only the issue of title, and even where a money verdict is elected to be taken, that verdict is, ordinarily, the value of the property. *Campbell* v. *Trunnell, 67 Ga.* 518. Certainly, where the action is brought under title reserved in a conditional sale, it may be defeated by tendering the purchase-price, which is the value of the property fixed by the parties. But this is on the principle that the payment of the purchase-money under the contract defeats the title of the seller and vests it in the purchaser. So that, while title remains in the plaintiff where there has been a conditional sale and the purchase-money or any part of it is past due, and while the seller may proceed to recover a judgment against the vendee for the purchase-price, his right to maintain trover and assert his title under the terms of the purchase remains intact until the condition which defeats his title, that is, the payment of the purchase-money, has been performed, and in case of recovery the measure of damages is the value of the property.

2. Another contention of the plaintiff in error is, that the court erred in directing a verdict for the plaintiff for the value of the machinery in his possession, ruling, in effect, that, unless it could be shown that the plaintiff was insolvent, the damages

**HARDEN _v._ LANG.**

claimed to have been sustained because of the breach of that contract could not be pleaded in the nature of recoupment in an action of trover, it being shown that the plaintiff was a resident of another county in this State. The action of trover is, of course, an action sounding in tort, the gist of which is the conversion by one of the goods of another. The damages sought to be pleaded, being for the breach of a contract, had their existence by virtue of the contract. By section 3759 of the Civil Code it is provided that recoupment may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to the defendant. Some of the features of the doctrine of recoupment are near akin to those of set-off, and in the case of _Fontaine_ v. _Baxley, Boles & Co.,_ 90 _Ga._ 416, it was said in the opinion that there is practically no difference between the plea of set-off and recoupment. While we may not go to this extent in our ruling, because there is an essential difference between the two, as shown in section 3757 of the Civil Code, yet it must be conceded that each of these pleas is admitted as a defense under a like general rule. By section 3996 of the Civil Code it is declared that, as to set-off, equity generally follows the law; but if there is an intervening equity not reached by the law, or if the set-off be of an equitable nature, the courts of equity take jurisdiction to enforce the set-off. So that, at law, recoupment may be pleaded in cases arising ex contractu, and, by this rule, in equity recoupment in the nature of a set-off may be pleaded when, from some intervening equity, good conscience requires it to be done. If the seller of the property had instituted an action against the defendant below to recover a judgment for the value of the property, which was one of his rights, then, under our statute as interpreted by a number of the decisions of this court, he would have been entitled to plead his damages in the nature of a recoupment; but when the seller instituted an action to recover the property by virtue of his title, which was another of his rights, the intervening equity which alone authorizes such a plea to be entertained is wanting, under the proved facts of this case. The plaintiff, while not a resident of the county where he brought suit, is a citizen of this State residing in another

county. He can not, therefore, be classed as a non-resident, because he is an inhabitant of the State of the forum. Black's Law Dictionary, "Non-resident." Not only so, but he is solvent — at least must, under the admissions made in the record, be so treated for the purposes of this case. As a matter of fact it will be inconvenient for the plaintiff in error to bring suit against the seller in the county of his residence, but this inconvenience is one which is felt by all creditors who hold a claim on a person residing out of the county of the residence of the creditor, and must be borne because it is the result of a constitutional provision. The plaintiff below asserted that the defendant was in possession of certain goods to which he had title; the defendant admitted the fact charged, but said in reply that the plaintiff had injured and damaged him in a matter growing out of the contract on which the plaintiff relied to recover; and while in furtherance of justice a court of equity in certain instances will aid the defendant in such an action to liquidate his damages occasioned by a breach of the contract, although it was brought for the specific purpose of asserting title to property, there must be more than mere inconvenience which will authorize it to do so.

In the case of *Barrow* v. *Mallory,* 89 *Ga.* 76, this court ruled that, " In an action of trover, unless there be some special equitable ground (such as non-residence or insolvency of the plaintiff) for allowing the defence, the damages sustained by the defendant from a breach of contract by the plaintiff are not the subject-matter of set-off, and can not be so pleaded." And Mr. Pomeroy, in his Code Remedies, § 767, in reaching a conclusion on this subject, practically announces the same rule in the following language: " It would seem that, in an action to recover the possession of specific chattels, no counter-claim is possible, unless, perhaps, equitable relief may be awarded under some very exceptional circumstances." See also 11 L. R. A., note on page 257; *Green* v. *Combs,* 81 *Ga.* 210; *Smith* v. *Printup,* 59 *Ga.* 610. This rule, so clearly founded on principle, must not be confused with that announced by this court in several cases where actions were brought to recover personal property when title was reserved in the seller until the purchase-price

was paid, and where it was ruled that if the property so pur-
chased was defective, or not as warranted, for which reason the
real value of the article purchased was less than the contract
price, proof of these facts could be made under proper plead-
ing in an action of trover.   There is no denial in any of these
cases of the principle we are contending for, but the reasoning
rests on the fact that the property is contracted to be sold for a
given price which, according to the representations and war-
ranty made, is its value.   If the representation or warranty as
to quality or soundness be in fact not true, then the contract
price was not really the value of the article.   The sale having
been made on the condition that the title is reserved until the
price be paid, the condition of the title depends, of course, on
the fact whether the purchase-money has been paid.   So that,
when an action of trover is brought under a contract of that
character, it can be defeated by showing that the price has been
paid.   If this be true, the title of the seller is divested, and it is
in the purchaser.   If it be not entirely paid, then, under a
proper construction of the terms of the contract, title vests in
the purchaser when the true and correct purchase-price is paid.
Therefore the measure of damage is such correct price; and,
in order to ascertain it in cases of this class, proof is allowed
touching the real value, not as a set-off nor in the way of recoup-
ment, but as a defense to the assertion of title which the plain-
tiff makes, and to fix the real measure of damage.   See *Guilford
v. McKinley,* 61 *Ga.* 230.   The conclusion, then, seems to be
that, as a legal proposition, a claim arising ex contractu can not
be set off at law in an action sounding in tort, and that while
in exceptional cases a court of equity will entertain a prayer
for relief founded on such a claim, it will only do so because
of some special equity.   Tested by this rule, the plea interposed
by the plaintiff in error in the trial of the case below, by which
he sought to have his damages for the breach of the contract
liquidated, was not good, and we find no error in the ruling of
the court of which he has complained.

   *Judgment affirmed.   All the Justices concurring.*