*Colquitt & Conyers,* for defendant.

---

## 2833. SOUTHERN RAILWAY CO. *v.* BRANCH.

1. One of the different remedies which accrue to a party to an indivisible contract when the other party wholly refuses to perform is the right to sue on a quantum meruit for his services, or for such money as he has expended, if he himself has done anything under the contract, or has paid out money in the execution of its terms.

2. Where the value of property, or of a paper evidencing the legal title to property, is involved, the amount which the property or instrument in question has been treated by the parties, in their transactions in relation thereto, as being worth is of such evidentiary value as to authorize the jury to infer that it represents the true market value, especially in the absence of evidence to the contrary.

3. The contention that the court did not treat the plaintiff in error fairly in the presentation of the issues to the jury is not well taken, as appears from an inspection of the charge as a whole.

4. "An objection that a document offered in evidence was not admissible, because the execution of the same was not proved as required by law, being overruled, the presumption is that the execution was duly proved, unless the contrary affirmatively appears, either by an authentic statement that there was no evidence of execution, or by setting out such evidence on that subject as was adduced to the presiding judge. Mere preliminary evidence upon such a question is not for insertion in the brief of the evidence requisite to support a motion for a new trial. Consequently its absence from the brief does not warrant the conclusion that the overruled objection should have been sustained."

DECIDED JUNE 7, 1911.

Action on contract; from city court of Baxley—J. P. Highsmith, judge pro hac vice. June 21, 1910.

*Bennet, Twitty & Reese, J. B. Moore,* for plaintiff in error.

*W. H. Watson, James R. Thomas,* contra.

POWELL, J. Branch sued the Southern Railway Company, alleging, that he had been agent for the company at Baxley, Ga., and that a shipment of shoes came to that place by freight from A. W. Tedcastle & Co., of Boston, Mass., as shippers, consigned to themselves, "order notify" Mr. F. A. Morris—that is, that the goods were shipped with the bill of lading attached to a draft for $103.50, the price of the goods; that Mr. Morris failed to pay the draft, and, acting on what purported to be instructions from Tedcastle & Co., he, as agent for the railway company, reshipped the goods to Coggins & Brown, a firm of merchandise brokers in Atlanta; that Tedcastle & Co. afterwards filed a claim for the value of the goods, insisting that they had not ordered them reshipped; that when this claim was filed with the railroad company the plaintiff was unable to produce the written order of reshipment, and made an agreement with the claim agent of the railroad company that he would pay to the company the value of the goods, and that they might settle with Tedcastle & Co., with the understanding that the company would transfer and deliver to him the bill of lading and other papers under which title to the goods was held; that he paid the money to the railroad company, but that it refused, over his demands, to transfer to him the bill of lading and other papers by which the title to the shipment was held. The answer of the defendant consisted merely of a denial of the salient features of the plaintiff's petition. The plaintiff introduced enough evidence to prove his case as laid, and the jury returned a verdict in his favor for the amount that he had paid to the railroad company, with interest. In its motion for a new trial, the railroad company makes a number of assignments of error.

1. The first point is that the verdict should be set aside on the general grounds, because it does not appear from the evidence how or wherein the transfer and delivery by the railroad company to the plaintiff of the bill of lading, papers, receipts, documents, etc., would have enabled him to secure judgment against Coggins & Brown, to whom the goods were finally delivered; that a formal transfer of these papers was not necessary to put the title in the plaintiff; that even if the legal title was not transferred by the mere fact of his paying the money, still he had an equitable title

thereby, and could have sued in equity to assert all of his rights; and that even if this was not so, still he could have used the name of the holder of the legal title as plaintiff for his use, for the purpose of suing Coggins & Brown, or whomsoever it was necessary to sue in order to recover for the value of the goods. The plaintiff's suit, it must be remembered, proceeded on the theory that he had made a definite contract with the railroad company that if he paid it this sum of money, it would transfer to him the writings by which the title to the goods had been held, and that the railroad company had breached that contract by refusing to carry out its part of the contract in any respect. The Supreme Court, in *Harden* v. *Lang,* 110 *Ga.* 392, 394 (36 S. E. 100, 101), in discussing the rights of one of the parties to an indivisible contract, where the opposite party had breached it by failing to perform, shows that the injured party has a number of remedies, one of which is stated as follows: "If he had done anything under the contract, or paid out any money in the execution of its terms, he had a right to sue on a quantum meruit and recover for the same, this being a cause of action distinct from the original contract, but based upon a contract created by law." The plaintiff in this case did not contract for the equitable title to the goods, but contracted for the legal title, and the defendant company wholly failed to perform its contract in this respect; and under the ruling just quoted the plaintiff, because of this breach, became entitled to recover in an action ex contractu the very amount which he did recover—that is, the amount he paid over to the railroad company, with interest.

Able counsel for the plaintiff in error are doubtless correct in the proposition that the transaction vested the plaintiff with rights which he could have enforced in equity, just as effectively as he might have enforced those same rights at law if the formal transfer of the writings had been made to him. But we do not think that this fact, or the fact that the law gave him the right to use the name of the holder of the legal title for the purpose of bringing an action in his favor, in any wise impairs his right to insist that the company's refusal to transfer the formal title is a breach of the contract. To say that the party is entitled to the one remedy is not to deny that has the other also. For instance, if A. makes a contract with B., calling for a warranty deed to a certain piece of

land, as to which B. holds the legal title, and as to which C. holds an illegal possession, and A. pays to B. the stipulated purchase price and demands the warranty deed, and B. retains the price, but refuses to make the deed, it can not be questioned that A. thereby acquires the right to assert a complete equitable title to the land, as well as the right to use the name of B. as his lessor in ejectment (if the action be brought in the fictitious form), or as plaintiff suing for his use, if the action be brought under the code procedure, and that by a proceeding either at law or in equity he could thus recover the land from C. Still, notwithstanding that all this is true, A. has the right to insist upon his warranty deed, and to treat B.'s failure to execute it as a breach of the contract, and may decline to proceed for the land itself, and may maintain a suit against B. for the amount which he has paid him; and the analogy between the case suggested and case at bar is so complete, it seems to us, as to answer fully the argument of counsel as to this point.

2. It is further insisted that the burden was upon the plaintiff to show that the railroad company's breach of the contract had damaged him, and, further, to furnish to the jury definite proof by which they could measure the extent of this damage, and that there was a failure of proof in this respect; that it is not shown what the shoes were worth, or that, if the title papers had been transferred to the plaintiff, he could have collected anything under any judgment which he might have obtained against Coggins & Brown, because it was not shown that Coggins & Brown were solvent. We think the jury had before them facts and circumstances from which they could well have inferred the value of the shoes, and of the writings by which the legal title to them was held. Conceding that the measure of damage was not fixed at the amount the plaintiff paid the defendant, with interest, and that it was necessary for the plaintiff to show the value of the goods, or of the title papers by which they were held, we still think that there was enough evidence upon which the jury could have based an intelligent and accurate inference. The fact that the original shippers had shipped them out with a draft for this amount attached to the bill of lading, and the fact that the defendant, in settling with the plaintiff, recognized that a claim of this amount was proper, is certainly enough, in the absence of any evidence to the contrary, to

lead an intelligent juror to assume that the goods were worth this amount, at which they had been uniformly valued in the transactions of the parties. We further think that the fact that the plaintiff was buying and the defendant was selling what practically amounted to an account against Coggins & Brown, on the basis of 100 cents on the dollar, authorized the jury, in the absence of evidence to the contrary, to assume that Coggins & Brown were solvent, and that a judgment against them would be collectible.

3. Another insistence of the plaintiff in error is that the trial judge was not fair in his charge to the jury, because he instructed them at undue length as to the contentions of the plaintiff, and made no corresponding presentation of the contentions of the defendant. An examination of the entire charge shows that it is a very concise presentation of the issues in the case and of the principles of law applicable thereto. The judge stated the salient allegations of the plaintiff's petition, and then told the jury that the defendant denied these things; and that correctly states the status of the pleadings. He then instructed the jury that the burden would be upon the plaintiff to satisfy them as to these elements of the case (taking them up in detail) before there could be any verdict in his favor, and that, if they found that he had proved them, there might be a verdict in his favor. The fact that the contentions of the plaintiff were detailed at length was not a matter of special favor to the plaintiff, for they were thus detailed in connection with a statement that these were the things which the plaintiff would have to prove before he could recover. It may be noted in this respect that the court not only put upon the plaintiff the burden of proving these things, but of proving them by a higher degree of evidence than that required in civil investigations, for he told the jury that the plaintiff had the burden of showing these things to the satisfaction of the jury to "a moral and reasonable certainty," which, of course, is the rule in criminal, and not in civil cases.

It may be that the court should have instructed the jury more specifically as to the basis upon which they should calculate the damages, instead of charging them generally that they should return in his favor whatever amount they "might think that he was damaged by reason of the failure of the defendant to comply with the contract," in the event they found in his favor as to the facts upon which his right to recover was based; but as the jury found

the right amount, and as the evidence did not admit of two findings on this issue, and as there was no request for further instructions, there is no reason to grant a new trial on this ground.

4. Some of the grounds of the motion for new trial complain of the admission of writings without sufficient proof of their execution, and of the admission of the secondary evidence of writings without a sufficient accounting for the absence of the original. These grounds themselves are not in proper form to present the question for consideration (*Arnold* v. *Adams,* 4 *Ga. App.* 56 (2), 60 S. E. 815); but aside from this technical delinquency, we may say that there was no abuse of discretion on the part of the trial judge in admitting this evidence, in the light of what was actually proved as to the execution of the writings and as to the inaccessibility of the originals. Besides, these writings related to a feature of the case which was immaterial, because the plaintiff's right to recover would have been the same, irrespective of what might have been the truth as to the particular matter to which these writings related.

Having carefully gone through the record, we find no reason for granting a new trial. *Judgment affirmed.*