EVANS MARKETING AGENCY INCORPORATED *v.* FEDERATED GROWERS CREDIT CORPORATION *et al.*

No. 8757.   August 10, 1932.

298

*Smith & Smith* and *George A. Pindar,* for plaintiff in error.
*Jule Felton* and *Jule W. Felton,* contra.

GILBERT, J. The judgment in this case was reversed on June 14. A motion for rehearing was filed June 20, and was promptly granted. The writer of the opinion, being impressed with the fact that some phases of the case had not been sufficiently considered, joined in the request that the court grant the motion. The case has given the writer a great deal of concern, and he has expended a great deal of time and labor in the earnest endeavor to arrive at the correct result. The original opinion has been withdrawn, and after still further consideration another is substituted, containing additional discussion of the questions involved.

■ The first question to be decided is whether or not a crop of peaches is such a crop as is contemplated in the Civil Code, §§ 3349, 3350, under which the mortgagee, now plaintiff in error,

claims priority over the bill of sale. We hold that peach crops are not therein contemplated. Defendant in error, in his brief on motion for rehearing, makes the following statement: "On the trial of this case in the lower court, we very vigorously contended that peaches were real property and not subject to mortgage as personalty. We made lengthy argument, going into the development of the peach from the time the small tree was set out to the time it began to bear. We contended that the legislature, in passing the act of 1922, did not refer to crops which were fructus naturales (Code, § 3651-1)"—Park's Supp. 1926, § 3655 (a). A lengthy array of authorities is furnished, many of which are included in the following citations: *Hamilton* v. *State,* 94 *Ga.* 770 (21 S. E. 995); *Bagley* v. *Columbus Southern Ry. Co.,* 98 *Ga.* 626, 645 (25 S. E. 638, 34 L. R. A. 286, 58 Am. St. R. 335); 8 Ruling Case Law, 355; In re Estate of Andersen, 83 Neb. 8 (118 N. W. 1108, 131 Am. St. R. 613); Sparrow v. Pond, 49 Minn. 412 (52 N. W. 36, 32 Am. St. R. 571, 16 L. R. A. 103); Rogers v. Elliott, 59 N. H. 201 (47 Am. R. 192); LeBarron v. Babcock, 122 N. Y. 153 (25 N. E. 253, 19 Am. St. R. 488, 9 L. R. A. 625); 17 Corpus Juris, 378; Simmons v. Williford, 60 Fla. 359 (53 So. 452, Ann. Cas. 1912C, 735); Kennewick Supply & Storage Co. v. Fry, 133 Wash. 341 (233 Pac. 558); Stulmiller v. Stulmiller, 140 Wash. 174 (248 Pac. 393); 1 Schouler on Personal Prop. §§ 100 et seq.; 4 Kent's Com. 73; 1 Brown's Law Dict. (7th ed.) 465; Rodwell & Phillips, 9 Mees & W. 501; Smith v. Leighton, 38 Kan. 544 (17 Pac. 52, 5 Am. St. R. 778); 1 Hilliard, Real Prop. 13.

Among many authorities on the subject we quote from the case of Sparrow v. Pond, supra, in which the Supreme Court of Minnesota dealt with a case concerning "crops," and in the opinion said: "At common law those products of the earth which are annual, and are raised by yearly manurance and labor, and essentially owe their annual existence to the cultivation of man, termed 'emblements,' and sometimes 'fructus industriales,' were, even while still annexed to the soil, treated as chattels, with the usual incidents thereof as to seizure on attachment during the owner's life, and transmission after his death. This class included grain, garden vegetables, and the like. On the other hand, the fruit of trees, perennial bushes and grasses growing from perennial roots, and called, by way of contradistinction, 'fructus naturales,' were, while unsevered from

the soil, considered as pertaining to the realty, and as such passed to the heir at the death of the owner, and were not subject to attachment during his life. . . If the purpose of planting is not the permanent enhancement of the land itself, but merely to secure a single crop, which is to be the sole return for the labor expended, the product would naturally fall under the head of 'emblements.' On the other hand, if the tree, bush, or vine is one which requires to be planted but once, and will then bear successive crops for years, the planting would be naturally calculated to permanently enhance the value of the land itself, and the product of any one year could not be said to essentially owe its existence to labor expended during that year; and hence it would be classed among 'fructus naturales,' and the right of emblements would not attach. . . The word 'crops' had, long before this statute [referring to a Minnesota statute], acquired in law a meaning synonymous with or equivalent to the common-law term 'emblements,' and neither of them included fruits of perennial trees or shrubs, and it is to be presumed that the term 'crops' is used in the statute in this same sense."

From the above authorities we feel driven to the conclusion that a crop of peaches is not such a crop as is contemplated in the sections of our code above mentioned. Those sections deal with "crops" as "emblements." However, that ruling in no sense is to be construed as a decision that the grower of peaches may not obtain credit and secure the indebtedness by a mortgage or a bill of sale, whichever may be deemed advisable, on a crop of peaches, to mature in the future. In the case of a peach crop, the advance or loan may be made to cover crops not made or gathered within the twelve months or calendar year, as prescribed in the Civil Code (1910), § 3349, Michie's Code §§ 3310(1), 3348(1), respectively. The act of 1925 (Ga. L. 1925, p. 118; Michie's Code § 3310(1)), like the Civil Code, §§ 3349, 3350, and Michie's Code, § 3348(1), refers to annual crops. Section 3310(1) merely enables the producer to obtain advances covering crops to be grown by him within twelve months from the date of the bill of sale, although such crops may not be planted or growing at such time. It provides that such a bill of sale passes title, and that it is not superior to the lien of the landlord for rent and supplies and laborers' liens. Such bill of sale must be made in accordance with Civil Code § 3306. The act of 1924 (Ga. L. 1924, p. 125; Michie's Code § 3348(1)) merely

provides that a mortgage to secure advances for the purpose of making and gathering crops shall embrace and cover crops before the same are planted or growing. That statute became necessary because the established law of Georgia theretofore had been that the mortgage on a crop before it was planted was invalid. The General Assembly changed that law for the benefit of agriculture, so that the producer might secure his credit for such time antecedent to planting as to afford him a means of preparing his land for cultivation. Necessarily, therefore, the word "crops" referred to in that act is synonymous with "emblements" as used in the same sense that it has been used in the common law. The act, therefore, being in derogation of the common law, must be given strict construction, and that construction requires us to restrict it to the class of products to which the words have always been applied heretofore, and for which the language of the act itself seems to make a necessary application. When it is observed that its provisions are applicable only when the crops are planted "within the limit of the calendar year," there is no escape from the conclusion that it can not apply to a peach crop. No one will contend that any crop is possible within a calendar year from the planting of a crop of peaches.

We next come to Civil Code (1910) § 3349. That section has reference to the lien of mortgages on crops given to secure the payment of money, supplies, and other articles of necessity to aid in the making and gathering of such crop. That section has force for only one purpose, and that is to provide that such mortgages "shall be prior to judgments of older date than such mortgages." Since the contest in this case is not between a crop mortgage and a judgment, that section has no application. "The superiority of a mortgage on crops to older judgments is a creature of the statute referred to, but there is no statute making the lien of mortgages on crops superior to the rights of the grantee in a deed conveying title which is of older date than the mortgage." Virginia-Carolina Chemical Co. v. Floyd, 159 Ga. 555 (2) (126 S. E. 378). "The act of 1899 (Acts 1899, p. 78), which declared that the lien of mortgages given to secure the payment of debts for supplies, money, and other articles of necessity, including live stock, to aid in making and gathering such crops, shall be superior to judgments of older date than such mortgages, does not authorize the holder of such a mortgage to interpose a claim to the levy of an execution issued under an older judg-

ment and thereby prevent any sale at all. . . If the instrument under which the claim was interposed in this case be treated as falling within the provisions of that act, its lien could not be asserted by claim. If it be treated, not as a mortgage, but as a bill of sale conveying title which could be asserted by claim, the title so conveyed was not free from levy under an older judgment." *Ward* v. *Kennesaw Fertilizer Co.*, 127 *Ga.* 106 (56 S. E. 123). The same principles apply as between a mortgage and a bill of sale which in terms conveys title.

Civil Code (1910) § 3350, also urged by defendant in error, provides: "In order for such lien to have such priority, the money or other supplies mentioned shall be furnished in the year in which such crop is grown, and shall be intended in good faith to be used in and for the purpose of making such crops." It has reference to the lien created by Civil Code (1910) § 3349, in which it is made superior to judgments of older date. The two sections are part of the same enactment (Ga. Laws 1899, p. 78). Manifestly that section can not be disconnected from § 3349, and applies in contests between such crop mortgages and older judgments. The petition alleges that Evans Marketing Agency held a bill of sale to the peach crop, which was duly recorded. Under the allegations we are obliged to assume that the bill of sale was in every way in conformity to law, and therefore binding between the parties; indeed the holder of the bill of sale is endeavoring to enforce it; and the maker thereof has evidenced no disposition to dispute its validity. It is insisted that that contract is severable; that in terms it covers $410.73 advanced for the purpose of making the crop of 1928 and also a larger sum incurred antecedently; that petitioner admits the priority of the claim for the smaller sum $410.73, but denies that the claim for the larger sum can take precedence over the mortgage. Assuming that the contract is severable, the securities covering both amounts are superior to the mortgage of later date and recordation. We stated in the opinion originally rendered that the priority of the $410.73 was conceded by all parties. Therefore it is only necessary to deal with the question of priority of security for the antecedent debt.

The bill of sale itself is not before us, not being included in the record. The only information we have with regard to its terms is what is alleged in the petition. The petition does not allege that

it was drawn in accordance with the terms of the act of 1925 (Michie's Code § 3310(1)). It merely alleges that Hale executed a bill of sale to Evans Marketing Agency and that it carried title to the peach crop. It alleges that it was made "for the purpose of securing a certain balance carried over from 1927 season of $1587.91 and all other advances made by the defendant for the purpose of making said [1928] crop of peaches, which amounted to $410.73." That, however, does not prevent the bill of sale as a whole from operating to convey title to the peach crop for 1928 for the purpose of paying the entire indebtedness, including the antecedent debt. There was nothing to prevent Hale from executing the bill of sale to his peach crop to secure any antecedent debt, even though at the time of the execution of the bill of sale the crop was a part of the realty. A peach crop is very similar, in that respect, to a crop of turpentine. The turpentine, until separated from the tree, is a part of the realty. After such separation it is personalty. Dickens *v.* State, 142 Ala. 49 (39 So. 14, 110 Am. St. R. 17). No one can doubt that turpentine in pine trees may be sold or encumbered before the trees are even cut. As in the case of turpentine, after the peaches have ripened and been gathered, they are subject to levy and sale, and an incumbrance on such crop, whether by bill of sale or mortgage, may be foreclosed as on personalty. Peach trees are a part of the realty. They contain in them the elements which, when nourished from the soil, will produce first the bloom and then the peach. When the peach has appeared, but still adheres to the tree, the lien of the mortgage, or title in case of bill of sale, may attach. It may be that at that stage the peaches could not be levied upon and sold. That, however, does not prevent the lien from attaching. *Hixon* v. *Callaway,* 2 *Ga. App.* 678 (58 S. E. 1120). "Anything detached from the realty becomes personalty, and may be the subject-matter of larceny, even by the person wrongfully detaching it." Civil Code (1910), § 3622. After the peaches are gathered, the mortgage covering them may be foreclosed as on personalty.

Even if that were not so, the filing of a claim and bond released the peaches. The distributor sold them, received the proceeds, and presumably paid over such sums to the Credit Company as the latter was entitled to receive. The Credit Company is not entitled to question the legality of the foreclosure. The mortgage was exe-

cuted subsequently to the execution of the bill of sale, and subsequently to the recording of the bill of sale. The mortgagee, therefore, had constructive notice of the existence of the bill of sale at the time the mortgage was executed. The mortgagee admits that he acted with such notice. It is not expressly alleged that Evans Marketing Agency Inc. refused to carry out its alleged contract. Inferentially it is so alleged; that is, it is alleged that Hale, the maker of the bill of sale, so informed the mortgagee. Treating that as an allegation that Evans Marketing Agency Inc. had breached the contract, the breach would legally authorize Hale to pursue one of several remedies. "Under plain principles of law as we understand them, his rights were threefold in number: 1. If he elected to treat the breach as a discharge from further performance of the terms of the contract on his part, he was legally entitled to do so. 2. If he had done anything under the contract, or paid out any money in the execution of its terms, he had a right to sue on a quantum meruit and recover for the same, this being a cause of action distinct from the original contract but based upon a contract created by law. 3. He had a right of action on the original contract, which he might sustain either by a suit to obtain damages for the loss occasioned by the breach, or a suit to obtain specific performance of the contract. He could not exercise all of these rights, but he was entitled to have any one of them enforced; but if he acquiesced in the breach and did not claim his discharge from the terms of the contract, but chose to go on with it instead of repudiating it, and took a benefit under it, he can only have the right of recovery of damages. Clark on Contracts, 676, and authorities cited in note 177." *Harden* v. *Lang,* 110 *Ga.* 392, 394 (36 S. E. 100); *Williams Manufacturing Co.* v. *Warner Sugar Refining Co.,* 125 *Ga.* 408 (54 S. E. 95). Certainly Hale could have availed himself of the first remedy, by repaying the money received on executing the contract. The second remedy was not available, and the third would have been perhaps less desirable than the first. Hale, however, did not elect either of these remedies, but proceeded to execute a mortgage and to procure his advances from another source. He could have lawfully pursued that method, but a condition precedent, as we have just shown above, was that he should have refunded to Evans Agency the money he had received under the contract. He should, at least, have paid the $410.73 that Evans

Agency had advanced, to secure which the bill of sale was made. It is not sufficient to await litigation and then allege that he is ready and willing to pay it, or to pay any sum found by the court to be due.

Again, movant insists that the court overlooked the fact that Hale, in the circumstances, had the right to regard the debt to Evans Agency as valid and not subject to set-off for damages, "and obtain a second loan on the crop if a second lender was willing to take that chance." We thoroughly agree to this, and nothing said in this or the previous ruling is contrary. Hale certainly had that right. Undoubtedly he availed himself of it. A second lender was willing to take the chance. It obtained what inevitably and legally followed, a second loan secured by a mortgage, valid but subject to the older and first lien of the bill of sale. There was no compulsion on the mortgagee. It was a business opportunity that was desirable according to his then judgment, and he acted accordingly. He can not complain that a court of equity must enforce the contract as it was made by the parties. "Equity is ancillary, not antagonistic to the law; hence equity follows the law where the rule of law is applicable, and the analogy of the law where no rule is directly applicable." Civil Code (1910), § 4520.

Again, movant complains that the court overlooked the fact that the defendant in error does not claim to be an innocent party so far as the $410.73 advanced is concerned. The opinion as rendered contained the following: "It is assumed by all parties that at least Evans is entitled to be paid, out of the funds arising from the sale of the peach crop, the amount advanced to Hale for the making of the crop." That language seems to specifically state the fact said to have been overlooked. If the levy on the peaches was void for any reason, it is immaterial as to this proceeding. The peaches were released by the filing of the claim with the bond as required by law. The peaches have been converted into cash; the bond stands in lieu thereof.

█ We now come to the question which was overlooked in the previous decision. That question is whether the allegations and prayers of the petition are sufficient to authorize a court of equity to enjoin Federated Fruit & Vegetable Growers Inc., "the distributor," from paying any money to the defendant on account of the forthcoming bond, and "from receiving any money out of the credit or otherwise from the defendant on account of the car of

peaches referred to in the petition," or whether it is sufficient to enjoin Evans Agency from "proceeding any further with its mortgage foreclosure, levy, any proposed suit on the forthcoming bond described, or in any other case or action, except in response to this petition, and also from making any transfer or assignment of any alleged cause of action against any of the parties to this bill," "that W. S. Williams and R. W. Hale be enjoined and restrained from making any payment whatever to the defendant on account of said forthcoming bond," and for a complete accounting between all the parties. A partial explanation, but not an excuse, for the failure to discuss the question just mentioned is that there was a bare mention of that question in the brief of the defendant in error. The allegations bearing on that question, as shown in the statement preceding, are that by reason of the transactions described and by reason of such non-payment Evans Agency Inc. is indebted to the Credit Corporation to the amount of the purchase-price agreed upon with the distributor. It is alleged in the petition that Evans Agency is insolvent.

The petition of the Credit Corporation makes all of the other parties defendants. There is no demurrer, so far as the record discloses, challenging the right of joining these parties, or the jurisdiction. Accepting the allegations of the petition as true, as did the trial judge on preliminary hearing for injunction, Evans Agency Inc. is indebted to the plaintiff. Evans Agency will be entitled to judgment against the bondsmen. These defendants, pursuant to the terms of the bond, will be compelled to pay the amount of their liability into court. The Credit Corporation can not avail itself of the process of garnishment at law to reach the amount due by the bondsmen, because the latter hold it subject to order of the court. Therefore it would seem that the trial judge correctly granted the injunction to prevent Evans Agency, admittedly insolvent, from realizing the amount of its claim against the bondsmen and the possibility of placing that sum beyond the reach of any judgment against the Agency by the Credit Corporation. The remedies at law being inadequate, it was within the power and jurisdiction of the court of equity to settle the whole controversy, to do equity between all the parties, and to hold and dispose of the amount to be paid in by the bondsmen, according to their respective rights. It is not necessary, and we do not decide that the facts alleged in the peti-

tion will authorize all of the relief sought. We merely rule that it will authorize some relief, and therefore that the court did not err in granting the injunction. There is no demurrer in the case, either general or special; therefore we have not dealt with any other question except with reference to the grant of the injunction. There is no other assignment of error.

*Judgment affirmed. All the Justices concur.*