JOHN B. COLTON, EXr.

*v.*

FIELD, LEITER & Co.

*Filed at Ottawa October 31, 1889.*

1. CONTRACTS—*rule of construction.* That which is primarily to be considered in construing instruments of writing, is to ascertain the intention of the parties. Each clause and provision in the writing is to be read in the light of all the provisions and recitals contained therein.

2. ADMINISTRATION OF ESTATES — *equality of distribution — among creditors of the same class.* The provisions of the statutes requiring a classification of the claims allowed against the estates, etc., of deceased persons, and their payment in such classes without preference as to creditors of the same class, are mandatory, and binding upon the courts. In the distribution of the assets of an estate, there can lawfully be no preference of one creditor over another of the same class. So where one creditor, by contesting the final account of an executor, increases the assets liable to distribution, this will give him no preference over other creditors of the same class, as to such increased assets.

3. SAME—*costs—personal liability of executor or administrator.* Where an executor or administrator attempts to secure a final discharge without accounting for all the assets he is lawfully chargeable with, and the creditor objecting to his account finds it necessary to prosecute an appeal in order to procure the reversal of the judgment discharging him, such executor or administrator will be chargeable individually with all the costs that may have accrued prior to the time the case is

brought back to the county court, even though the contestants of the account do not succeed in all their objections to the report.

4. But when the executor, after the reversal of the order approving his final report, amends his account, so as to charge himself with the proper sums for which he has been found liable, and the objectors continue their opposition to his discharge, but are unsuccessful, they should be charged with all the costs accruing from such further litigation.

5. SAME—*executor continuing business—release by creditors, construed.* An executor, by the request of the larger part of the creditors of an estate, was allowed to continue the testator's business, and for that purpose furnished goods to a large amount. Two of the creditors had appealed from an order of the county court approving the executor's final account, and sought to make him lose the goods furnished by him. All the creditors, except three, executed and delivered to the executor, during the pendency of the appeal, a writing under seal, reciting the facts, and stating their approval of the acts of the executor, and that in consideration of the premises they released him from further liability as such executor: *Held*, that this was not a release of the estate from liability to such creditors, and that the instrument did not operate as a transfer of their unpaid claims to the executor, but that its object was to release the executor from any further personal liability.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding.

E. F. Thomas, of Galesburg, Illinois, died in 1872, and the appellant, John B. Colton, became the executor of his estate. The indebtedness of the estate was over $50,000, and its assets consisted almost entirely of a stock of goods, the fair cash value of which, as the evidence tends to show, would not have paid in excess of twenty-five cents on the dollar of such indebtedness. E. S. Jaffray & Co. were the heaviest creditors, their claim amounting to $30,976.75, and at their request, and that of a large majority, in number, of the other creditors, the county court of Knox county, in which the administration was pending, entered an order empowering the executor to continue the business of the deceased, and to replenish the stock in trade, from time to time, until the old stock of goods was closed out. The business was thus continued for a period of

about nine months. The executor was himself a dry goods merchant in the city, and, by his direction, the foreman in charge of the estate store selected from the private store of the executor, during the time in question, and as they were wanted, such goods as were required to shape up the old stock, and the goods thus procured amounted to the sum of $21,-173.32. Dividends were declared, and paid by the executor to the creditors, amounting, in the aggregate, to forty-six and five-eighths per cent of the indebtedness. The goods were billed to the estate at a profit of ten per cent.

In 1876 appellant filed in the county court his final report and account as executor, and asked for its approval, and that he be discharged as such executor. Upon this application, Field, Leiter & Co. and Henry W. King & Co., who are creditors of the estate, interposed objections to the report. The court overruled these objections, approved the report, and allowed the executor $2500, in gross, for his services. There was an appeal to and a trial *de novo* in the circuit court, and the result was the entry of an order for the approval of the report and discharge of the executor. An appeal was then taken by the objectors to the Appellate Court for the Second District, and there the judgment was reversed, and the cause remanded, with directions. (See *Field, Leiter & Co.* v. *Colton,* 7 Bradw. 379.) The principal contention, prior to said judgment of reversal in the Appellate Court, was in respect to the claim of the objectors that the whole of the credit of $21,-173.32 appearing in the account of the executor, for goods furnished by him, should be disallowed. The Appellate Court denied this claim of the objectors, but reversed the judgment on the ground the executor was not entitled to the profits he had charged upon the cost of the goods, and was accountable to the estate therefor, and on the further ground his compensation should have been limited to a sum not exceeding six per cent on the personal estate, exclusive of what the executor had furnished to replenish the stock.

Prior to that appeal, and while the case was still pending in the circuit court for trial, some thirty of the creditors of the estate, representing about $45,000 of the claims probated against it, signed and sealed an instrument in writing, which, omitting the signatures and seals, was as follows:

"*In the matter of the estate of E. F. Thomas, deceased, late of Galesburg, Illinois:*

"At the outset of the executorship of John B. Colton, executor of said estate, he was requested by E. S. Jaffray & Co., of New York, and other creditors of said estate, representing three-fourths in number and amount of the entire liabilities against said estate, to obtain from the county court of Knox county, Illinois, an order permitting him to continue the business of said E. F. Thomas for such reasonable time as he deemed necessary for the advantageous sale of the stock of goods on hand belonging to said estate. Such order was made by said court, the necessary supplies were purchased by said Colton, executor, under said order, and the estate fully administered upon thereunder by him in accordance with the wish of said creditors, and the entire net proceeds of said estate distributed to the creditors, amounting to forty-six and five-eighths per cent of their respective claims. And said executor having filed in said county court his final account current, accompanied with the proper vouchers, and the judge of said court having examined and approved of the same, he entered a final order declaring the estate insolvent and discharging said executor from further liability thereunder, a copy of which is hereto attached. Now, in consideration thereof, and for other good and valuable considerations by us received through the unusual exertions used by the said Colton, executor, and personal risk of extra trouble and personal loss by reason of acting under and carrying out the order of said court in the interests of said estate, we do, each and every of us, respectively, approve the course of said Colton, as aforesaid, in the management of the said estate, and release the said John B.

26—131 ILL.

Colton from further liability as such executor on account of our respective claims against said estate of E. F. Thomas, deceased.

"Witness our hands and seals set opposite our respective claims."

Upon the remanding of the cause to the county court, appellant restated his account, as follows:

*"Statement of account under findings of court.—Charge:*
To amount of reductions on bills furnished estate
store by order court, with all profit and discount
off, (Ex. A.) . . . . . . . . . . . . . $2,320.00
To excess of commissions, (Ex. B.) . . . .      147.06
                                           $2,467.06
To interest on above from Dec. 23, 1876, to date,
July 1, 1886 . . . . . . . . . . . .     1,412.28
Balance on hand . . . . . . . . . . .   $3,879.34."

The order of the county court was, "that the executor first pay Field, Leiter & Co. and H. W. King & Co., each, the sum of $300 for their expenses in and about the resisting of the discharge herein, and that the balance be distributed, *pro rata,* among all creditors of said estate who have proved their claims against the estate in proper time." Both parties appealed to the circuit court, and on the hearing in that court the judgment and order were, in substance, that the fund of $3879.34 must be paid to the objectors, Field, Leiter & Co. and Henry W. King & Co., and all other creditors who had not joined in the execution of the instrument in writing hereinbefore set forth at length, in satisfaction of their claims against the estate, if the same shall be sufficient to satisfy said claims, and if not sufficient, then the same shall be applied, *pro rata,* on said claims, and that the costs in both the circuit and county courts should be paid by appellant, but not out of funds belonging to the estate. Upon a second appeal taken to the Appellate Court for the Second District, that court affirmed the judgment of the circuit court in respect to all matters ex-

cept that of costs. The judgment against appellant, individually, for costs, was reversed, and the circuit court was directed to order that all costs that have accrued in the cause, either in the Appellate, circuit or county courts, should be paid by the executor out of the assets of the estate in his hands, in the due course of administration. Appellant now brings the record to this court by a further appeal, and among the assignments of error made by him upon the Appellate Court record are, that it was error to not limit the amount to be paid to appellees on their claims to the *pro rata* share of each, taking into account all claims allowed against the estate, and that it was error to construe the writing signed by the creditors as a release of the estate from all liability to them, severally, of their claims allowed in the county court. The appellees have assigned as cross-errors the reversal of the judgment for costs, rendered by the circuit court, and also the entry of the directions given by the Appellate Court in respect to costs.

Messrs. WILLIAMS, LAWRENCE & BANCROFT, and Mr. W. C. GOUDY, for the appellant.

Mr. FREDERICK A. WILLOUGHBY, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The words of the written instrument under seal, which seems to have been signed by all the creditors of the estate of Thomas except three, were: "We do, each and every of us, respectively, approve the course of said Colton, as aforesaid, in the management of the said estate, and release the said John B. Colton from further liability as such executor on account of our respective claims against said estate of E. F. Thomas, deceased." These creditors had received only forty-six and five-eighths per cent of their respective debts, and the language used did not necessarily and absolutely imply an intention to release the estate from liability for the residue of such debts. That which they expressed by the terms they employed was not that they

released the estate, or released Colton as executor of the estate, but that they released "the said John B. Colton from further liability as such executor."

The primary consideration in construing an instrument of writing, is to ascertain the intention of the parties. Each clause and provision in the writing is to be read in the light of all the provisions and recitals contained in the instrument. Here, the recitals are, in substance, that the executor, at the request of creditors representing three-fourths in number and amount of the liabilities of the estate, procured the order of the county court permitting him to continue the business for the time necessary for the advantageous sale of the goods on hand, and that the goods procured by him were purchased in accordance with the wish of said creditors; and further, that he had rendered his final account, which had been approved by the county court, and a final order entered discharging him from further liability thereunder. These recitals are followed by the statement, that in consideration of the premises, and of the unusual exertions of said Colton, and of his personal risk of extra trouble and personal loss in acting as he had, they, such creditors, approve of said Colton's management of the estate, "and release the said John B. Colton from further liability as such executor."

At the time the instrument was signed, the condition of affairs was this: that appellees, who were two of the creditors of the estate, and whose objections to the report of the executor had been overruled in the county court, had taken an appeal to the circuit court, where the matter of such objections was then pending for a hearing thereon *de novo*, and appellees were insisting, not only that Colton should be charged with the ten per cent profit realized by him from the goods he furnished to the estate store, and with the $147.06 of compensasation in excess of the statutory commissions, but also that he should forfeit and lose the whole of the $21,173.32 charged by him for the goods.

These circumstances, as well as the recitals in the writing itself, are proper to be considered in arriving at a conclusion in respect to the intent of the parties when they used the language they did. The creditors who used that language were, at the time, standing in an attitude antagonistic to appellees, and were hostile to the accomplishment of the objects they had in view. On the other hand, they approved of the course of Colton, and in consideration of what they regarded his "unusual exertions" in their behalf, and of the "personal risk" and danger of "personal loss" he had thereby assumed, they signed the instrument. It is manifest they did this for the purpose of assisting him in procuring from the circuit court an order in affirmance of the order which had already been made in the county court approving his final account and report, and discharging him as executor. The object which they had in view was not to release the estate from the residue of the indebtedness due them. If that had been their intention, they could readily have expressed it in plain terms in the writing, or else have signed receipts in full. Their intention was merely to release the said John B. Colton from further personal liability in his capacity of executor. It can not be presumed they contemplated the relinquishment of any right that might otherwise accrue to them from the possible disclosure of after-discovered assets; and it would be unreasonable to suppose it was their intention, that in the event the court determined that Colton was liable for the whole $21,-173.32, then that the whole of that amount should be, in the first place, applied to the payment in full of the claims of appellees, and the residue, if any, distributed to the heirs of the estate.

In the trial courts, the appellant made a claim that the instrument of writing in question was an equitable assignment to him, personally, of the unpaid claims held by the creditors signing it, and the same view is urged here. Taking this claim of appellant as a basis, appellees insist that if the creditors

who executed the writing intended and attempted thereby to assign their claims to Colton, such assignment would not inure to his benefit, but to that of the estate. The instrument contains no words of conveyance or transfer. Its language is, "we approve of the course of said Colton," and "release the said John B. Colton from further liability." Neither of these expressions is effective to work an assignment of a property right. The word "release" quite frequently imports a conveyance, but never when used in connection with the word "from," and affirmed with reference to the releasee. The creditors did not intend by the writing which they executed, to assign to Colton their respective claims against the estate, and enable him to hold and enjoy, as such assignee, any future dividends that might arise from subsequently discovered assets, or otherwise. Their sole object was to aid him in securing a release from a personal liability, but their acts were wholly ineffectual to accomplish this, or in any way to either increase or diminish the amount for which he was personally responsible.

The claim is also made by appellees, that by their diligence, and through their exertions, and at their expense, this fund of $3879.34 has been discovered and made available as assets to the creditors of the estate, and that therefore they are entitled to have their claims paid in full before there is any distribution made to the other creditors. The rule of equity upon which this contention is based does not apply to proceedings in the county court for the settlement of the estates of deceased persons. The act in regard to the administration of estates provides for the division of demands against them into classes, and that when the estate is insufficient to pay the whole of the demands, they shall be paid commencing with the first class, and that the demands in any one class shall be paid *pro rata;* and further provides, that if the assets are "not sufficient to pay the whole of the debts, the moneys  *  *  * shall be apportioned among the several creditors *pro rata,* according to their several rights, as established by this act."

(Rev. Stat. chap. 3, secs. 70, 71, 112.) These statutory provisions are mandatory, and binding upon the courts, and in the distribution of these assets of the estate of the deceased there can lawfully be no preference of one creditor over another of the same class.

We think the cross-error is well assigned. The costs that accrued in this proceeding prior to the time the cause was brought back to the county court after the first judgment of reversal in the Appellate Court, were occasioned by the attempt of appellant to secure a final discharge, without accounting for all the assets with which he was lawfully chargeable, and he should in justice pay the costs of that litigation, individually, and it makes no difference in regard thereto that appellees did not sustain all their objections made to his report. The costs that have accrued since the time above mentioned, have been caused by the attempt of appellees to absorb all or the greater portion of the assets then reported, and should be charged to them.

The judgments of the Appellate and circuit courts are reversed, and the cause remanded to the circuit court, with directions to enter an order in conformity with the views herein expressed.                    *Judgment reversed.*