(Opinion published 52 N. W. Rep. 34.)

---

## WISEMAN A. SPARROW *vs.* CEPHUS H. POND.

Argued April 20, 1892. Decided May 3, 1892.

**Blackberries, Unpicked, are Fructus Naturales.**—Blackberries, while growing on the bushes, are not subject to levy on execution as personal property.

Appeal by plaintiff, Wiseman A. Sparrow, from a judgment of the District Court of Dodge County, *Buckham,* J., entered January 18, 1892.

Plaintiff, Wiseman A. Sparrow, recovered a judgment September 6, 1886, in the District Court in Dodge County, against defendant, Cephus H. Pond, and others for $364.04. On July 17, 1891, the plaintiff caused a writ of execution to be issued out of that court upon that judgment, and it was on the same day delivered to the Sheriff of that county for service. Pond owned only eighty acres of land. He lived on it. It was his homestead. In 1877 he planted two and a half acres of it to Snyder and Ancient Britain blackberries, in rows five feet apart, and cultivated and hoed them in spring and summer, as farmers do corn. He strung wires along the rows to hold up the bushes from the ground. In the fall he cut out the

old wood, laid down the new shoots, and covered them with mulch for protection through the winter. The crops of berries in previous years had been picked and shipped and sold in the market by Pond. He was preparing to do the same with the crop of 1891. The Sheriff levied on this ripening crop of blackberries, and advertised and sold it to plaintiff on August 4, 1891, for $475, and gave him a bill of sale.

Plaintiff went to the ground with pickers and baskets to gather the ripe berries. Defendant interposed, and drove him away, claiming the Sheriff's sale to be void. Plaintiff then commenced this action of replevin, to obtain possession of the unpicked berries. Defendant gave bond, and required a return of the property, and afterwards picked and sold the fruit. The action was tried October 8, 1891. After the plaintiff's evidence was all given, the defendant moved the court to direct a verdict for defendant, on the ground that the berries when sold were unripe, growing on his homestead, and were a part of the real estate, and could not be sold under the writ as personal property. The trial court granted the motion, and directed a verdict that plaintiff was not entitled to the possession of the property described in the complaint. The court said that defendant's homestead right must be maintained inviolate; that, as the blackberries would ripen thereon during a number of days after the execution sale, plaintiff could not by his purchase acquire the right to enter from day to day upon the homestead and pick the fruit as it ripened.

*S. T. Littleton*, for appellant.

Courts in this state are not left to infer that, because eighty acres are exempt, all that is raised or grown upon such homestead is also exempt. The specification in the statute of the crops that are exempt has forestalled all judicial speculation as to exemption of crops on the homestead. *Horgan* v. *Amick*, 62 Cal. 401; *Citizens' Nat. Bank* v. *Green*, 78 N. C. 247.

Our homestead statute provides that eighty acres of land owned and occupied by any resident of this state shall not be subject to attachment, levy, or sale upon execution or any other process. This

statute does not say that a Sheriff shall not enter and make a levy upon chattels found thereon, or that a purchaser of those chattels shall not enter upon the homestead to take or carry away the chattels sold thereon by the sheriff under his writ.

The homestead law simply provides that the homestead shall not be sold for debt. It does not provide that Sheriffs and bidders shall not enter upon it to sell, gather, or remove unexempt property.

By statute in Georgia, "all produce, rents, or profits arising from homesteads shall be exempt from levy." Georgia Code, § 2026; *Marshall* v. *Cook*, 46 Ga. 302; *Wade* v. *Weslow*, 62 Ga. 562.

By statute in Vermont the homestead "and the yearly products thereof are exempt." *Jewett* v. *Guyer*, 38 Vt. 209.

In Texas it is held that crops growing on the homestead cannot be levied upon, but, when they have been severed, they are subject to levy and sale. *Alexander* v. *Holt*, 59 Tex. 205; *Coates* v. *Caldwell*, 71 Tex. 19; *Erickson* v. *Paterson*, 47 Minn. 525.

The evidence shows that these blackberries were *fructus industriales*. They were called "The Snyder" and "Ancient Britain." The bushes had been planted three years. Defendant had raised on them two crops of berries, and marketed them. New shoots came up from the roots every year, and each fall all other wood was cut out, and these new shoots were laid down and covered. In the spring they were uncovered, and supported on wires, and the ground cultivated. The berries do not ripen all at once, but through three or four weeks. A levy may be made upon grain or grass while growing, and upon any other unharvested crops. 1878 G. S. ch. 66, § 315. Chattels real may be levied upon and sold on execution. Id. § 300. Shares of stock, evidences of debt, and all property, real, personal, or mixed, may be levied upon and sold, and so may the debtor's interest in goods mortgaged or pledged.

And generally all tangible property which the debtor could himself sell can by execution be made the subject of involuntary transfer to pay his just debts. If it could not, saving exemptions, the administration of the law would be defective. 1 Freem. Ex'ns, § 110. The berries here replevied were produced mainly by the manurance and labor of the debtor. Blackberries in this state depend

on annual cultivation, and do not thrive or produce berries fit for market if left to nature. The shoots or new wood must in winter be laid down and covered, and in the spring raised and fastened upon trellises or other supports. The ground must be cultivated, mulched, and kept free from weeds and noxious insects. The crop of berries is the result of the labor and skill of the gardener; they are *fructus industriales.* They are not the spontaneous product of the soil. 1 Freem. Ex'ns, § 113; Benj. Sales, (Bennett's 4th Ed.) §§ 129, 130.

In *Frank* v. *Harrington,* 36 Barb. 415, the question was whether hops growing and maturing on the vines are real or personal property. It was conceded that the hop roots were real estate, as they live many years, and send up annually vines which produce in the fall the crop of hops. All the cases prior to that time were reviewed, and it was considered that strawberries, grapes, and hops, as now cultivated, grow by the manurance and industry of the owner, and should be put in the category of personal instead of real estate; and so of any kind of produce raised annually by labor and cultivation, except grass growing, or fruit not gathered from the trees. *Latham* v. *Atwood,* Cro. Car. 515.

*Robert Taylor* and *Samuel Lord,* for respondent.

Growing blackberries do not fall within the provisions of 1878 G. S. ch. 66, § 315. They are neither grain nor grass. Nor are they included in the term "any other unharvested crops." The word "crops" had, long before this enactment, acquired, both in common usage and in the law relating to execution sales, a meaning synonymous with or equivalent to the common-law term "emblements," and neither of them in this use included fruits of perennial shrubs or trees, such as blackberries, currants, apples, etc. 4 Amer. & Eng. Enc. Law, p. 887.

At common law, growing crops or emblements that were subjected to the levy of a writ of *fieri facias* against the tenant, or that went to his personal representative as personal assets in case of his death, were only such crops of his annual planting as were mainly the result of his manurance and labor in their cultivation, and as would

mature the same season in which they were planted. They did not include the grasses nor the fruits of perennial shrubs, even though planted and cultivated or pruned by the tenant. 1 Schouler, Pers. Prop. §§ 100, 104; 4 Kent, Comm. p. *73; *Rodwell* v. *Phillips,* 9 Mees. & W. 501; 1 Hill. Real Prop. § 15.

This statute of Minnesota extends the common law by including " grass " in express terms. If it had been the intention of the Legislature to extend it still further, and include these fruits, or any of them, it would not have used so inappropriate a term as the word " crops," which had been previously applied only to emblements. This expression, " any other unharvested crops," includes only such other crops of annual planting and reaping as were considered emblements, and subject to levy at common law, such as potatoes, turnips, etc.

An exception was made as to the single product of hops growing upon the vines, which, although growing from perennial roots, were considered to be the result of annual manurance and cultivation, and therefore classed as emblements. *Latham* v. *Atwood,* Cro. Car. 515; *Frank* v. *Harrington,* 36 Barb. 415.

The established rule seems to be that not only grass, trees, and the other spontaneous yield of the soil are considered to be part of the realty, but also the crop from such trees or other fruitbearing plants; such crop is a part of the realty, and must be sold as such, and the levy of an execution is void when made upon trees, clover, timothy, apples, pears, and peaches while ungathered. Gwinne, Sher. p. 220; Crock. Sher. p. 207; *Craddock* v. *Riddlesbarger,* 2 Dana, 206; *State* v. *Gemmill,* 1 Houst. 9; Jones, Chat. Mortg. § 145.

In *Frank* v. *Harrington,* 36 Barb. 415, cited by appellant, an exception to the general rule is made as to hops growing on the vines, upon the ground that, although produced from perennial roots, they require yearly culture and manuring to produce at all. Hop vines spring up, bear, and die the same season. That decision was based upon the precedents of the English common law, which made hops growing upon the vines an exception to the rule, and classed them as emblements. The rule is otherwise as to fruits, and any multiplication of exceptions would necessarily be arbitrary and unsatis-

factory.    Hop poles used to support the vines are real estate, even when taken down and piled up to wait the coming of another hop season.    *Bishop* v. *Bishop*, 11 N. Y. 123 ;  *Rodwell* v. *Phillips*, 9 Mees. & W. 503.

When this question has arisen under the statute of frauds, it has had many varying, if not confusing, decisions, generally based upon the apparent intention of the contracting parties, and furnishing no aid for the present case.    Wood, St. Frauds, §§ 191, 205.

The seizure and sale under the circumstances of the present case were an unwarrantable invasion of, and interference with, defendant's homestead right.    Such levy and sale while the crop is growing upon the homestead are an invasion of the homestead right, necessarily involving the exclusion of defendant from, and depriving him of, the beneficial use of his homestead.    Sheriffs and bidders may enter upon the homestead to sell or gather or remove unexempt property if it can be accomplished without excluding the homesteader, depriving him of the use and control of the homestead itself.    *Kelly* v. *Baker*, 10 Minn. 154, (Gil. 124;) *Umland* v. *Holcombe*, 26 Minn. 286.

The Supreme Court of Texas, under constitutional and statutory provisions precisely like ours, has authoritatively determined this very point, by decisions of unanswerable logic in several cases of this same nature.    *Alexander* v. *Holt*, 59 Tex. 205; *Coates* v. *Caldwell*, 71 Tex. 19; *Cobbs* v. *Coleman*, 14 Tex. 598.

MITCHELL, J.    At common law those products of the earth which are annual, and are raised by yearly manurance and labor, and essentially owe their annual existence to the cultivation by man, termed "emblements," and sometimes *"fructus industriales,"* were, even while still annexed to the soil, treated as chattels, with the usual incidents thereof as to seizure on attachment during the owner's life, and transmission after his death.

This class included grain, garden vegetables, and the like.    On the other hand, the fruit of trees, perennial bushes, and grasses growing from perennial roots, and called, by way of contradistinction, *"fructus naturales,"* were, while unsevered from the soil, considered
v.49M.—27

as pertaining to the realty, and as such passed to the heir at the death of the owner, and were not subject to attachment during his life. 4 Kent. Comm. p. *73; 4 Bac. Abr. 372, tit. "Emblements;" Freem. Ex'ns, § 113; 1 Schouler, Pers. Prop. § 100 et seq.; State v. Gemmill, 1 Houst. 9; Craddock v. Riddlesbarger, 2 Dana, 205; 4 Amer. & Eng. Enc. Law, tit. "Crops;" Rodwell v. Phillips, 9 Mees. & W. 501.

A possible exception to this classification is the case of hops on the vines, which have been held to be personal chattels, and subject to sale as such. The ground upon which this seems to be held is that, although the roots of hops are perennial, the vines die yearly, and the crop from the new vines is wholly or mainly dependent upon annual cultivation. The decisions upon that question, however, seem to be all based upon the old case of Latham v. Atwood, Cro. Car. 515. See Frank v. Harrington, 36 Barb. 415.

It is sometimes stated that the test whether the unsevered product of the soil is an emblement, and, as such, personal property, is whether it is produced chiefly by the manurance and industry of the owner. But, while this test is correct as far as it goes, it is incomplete. Under modern improved methods, all fruits are cultivated, the quality and quantity of the yield depending more or less upon the annual expenditure of labor upon the trees, bushes, or vines; but it has never been held that fruit growing upon cultivated trees was subject to levy as personal property. No doubt all emblements are produced by the manurance and labor of the owner, and are called "fructus industriales" for that reason; but the manner, as well as purpose, of planting is an essential element to be taken into consideration. If the purpose of planting is not the permanent enhancement of the land itself, but merely to secure a single crop, which is to be the sole return for the labor expended, the product would naturally fall under the head of "emblements." On the other hand, if the tree, bush, or vine is one which requires to be planted but once, and will then bear successive crops for years, the planting would be naturally calculated to permanently enhance the value of the land itself, and the product of any one year could not be said to essentially owe its existence to labor expended during that year; and hence

it would be classed among "*fructus naturales*," and the right of emblements would not attach. Darlington, Pers. Prop. 26.

This classification is, of course, more or less arbitrary, but it is the one uniformly adopted by the courts, (unless hops be an exception,) and it is the only one which will furnish a definite and exact rule. Blackberry bushes are perennial, and when planted once yield successive crops. They grow wild, but, like every other kind of fruit or berry, are improved by cultivation. The quantity and quality of the yield is largely dependent upon the amount of annual care expended upon them, but the difference in that respect between them and other fruits is only one of degree.

It seems to us quite clear that at common law such berries, while growing upon the bushes, were not subject to levy on execution as personal property, and we have no statute changing the rule. Evidently the main purpose of 1878 G. S. ch. 66, § 315, was, while permitting immature growing crops to be levied on, to prohibit their sale until they were ripe and fit be harvested.

The word "crops" had, long before this statute, acquired in law a meaning synonymous with or equivalent to the common-law term " emblements," and neither of them included fruits or perennial trees or shrubs, and it is to be presumed that the term " crops " is used in the statute in this same sense. The only change effected by the statute as to the kinds of products of the earth which may be levied on while still attached to the soil is, perhaps, to include perennial grasses. As we are of opinion that these berries, while growing on the bushes, were not subject to levy as personal property, it becomes unnecessary to consider any other question in the case.

To prevent misapprehension hereafter, it may be well, however, to say, with reference to the question whether crops growing upon a homestead under the statutes of the state are subject to levy, or whether their seizure would be an interference with the beneficial use and control of the homestead by the debtor, that it is not determined, as counsel for appellant assumes, by the case of *Erickson* v. *Paterson*, 47 Minn. 525, (50 N. W. Rep. 699.) In that case the grain grew upon land entered under the United States homestead law, by the provisions of which the land was not liable for debts

contracted prior to the issuing of the patent, the exemption not being at all dependent upon occupancy and use as a home.

Hence that case would not necessarily control the question discussed in the present case.

Judgment affirmed.

(Opinion published 52 N. W. Rep. 36.)