# CHARLESTON.

MOORE *et al.* v. HOPE NATURAL GAS CO.

Submitted September 14, 1915. Decided September 28, 1915.

1. EASEMENTS—*Construction of Grant—Oil and Gas Pipe Line—Repairs—Damages.*

   The grant of an easement ''to lay, maintain, operate and remove'' an oil and gas pipe line, the grantee to pay all damages ''to crops and fences'', authorizes an entry on the right of way to make repairs, and superadds no other liability except for injuries resulting from the negligent or wanton exercise of the right thereby conferred. (p. 651).

2. SAME—*Evidence—Grant of Easement.*

Such grant is competent evidence of the lawfulness of an entry thereunder, and, when tendered, should be admitted.    (p. 651).

3. ACCORD AND SATISFACTION—*Release—Receipt—Easement.*

A receipt by the grantor of such easement, acknowledging payment "in full for all damages on any and every account caused by or arising from laying, maintaining and operating" such pipe line, while owner of the servient land, the terms thereof, when properly construed, not necessarily comprehending subsequent injuries, does not operate as a release, or accord and satisfaction, barring him or his vendees from recovery for such injuries.    (p. 651).

4. EASEMENTS—*Grant of Easement—Construction—"Crops".*

The term "crops", used in such grant providing payment for injuries thereto, will, nothing appearing therein to the contrary, be given its usual and ordinary meaning as comprehending only such products of the soil as are annually planted, severed and saved by manual labor, as cereals, vegetables, grass maturing for harvest or harvested, etc., but not grass on lands used for pasturage.    (p. 655).

5. DAMAGES—*Fences—Measure of Damages.*

Damages to crops, as so defined, is measured by their market value at the time and place of injury, and to fences, when readily repairable, is measured by the cost of material and labor, which will, when properly applied, restore the premises to their condition before the interference.    (p. 655).

Error to Circuit Court, Wetzel County.

Action by J. F. Moore and others against the Hope Natural Gas Company.    Judgment for plaintiffs, and defendant brings error.

*Reversed, and new trial awarded.*

*A. B. Fleming, Charles Powell,* and *Kemble White,* for plaintiff in error.

LYNCH, JUDGE:

By a sealed instrument dated July 15, 1907, duly recorded Leonard Moore, for a valuable consideration paid, granted defendant, Hope Natural Gas Company, an easement over certain lands owned by him in Wetzel county, "to lay, maintain, operate and remove a pipe line for the transportation of oil and gas" from the place of production to market, "with the right of ingress and egress to and from the same".

Defendant agreed therein "to pay any damages which may arise to crops and fences from the laying, maintaining, operating and removing said pipe line, the damages if not mutually agreed upon to be ascertained and determined" by arbitrators selected in the manner specified in the grant, the awards of any two of them to be final and conclusive. Pursuant to such authority, and with the knowledge of plaintiffs prior to their acquisition of the title, defendant entered on the land, laid its line, and since continuously has operated it under such authority.

Subsequent to the date of the conveyance by Leonard Moore to plaintiffs, defendant again entered on the lands, as lawfully it could under the right of way contract, and thereon made certain excavations, in the record denominated "bell holes", according to the parlance of the oil business, the purpose of the excavations being repair of the section joints by substitution of new for old rubber appliances to prevent leakage. For the recovery of damages alleged thereby to have been occasioned to crops and fences, plaintiffs instituted this action before a justice, and recovered judgment for the amount of their claim, and also judgment upon appeal to the circuit court but for a less amount. On writ of error, defendant seeks reversal upon several assignments on the record and in argument.

The first assignment noticed goes to the very foundation of plaintiffs' right to maintain the action. Under this head, defendant sought to bar recovery by the introduction in evidence, refused by the trial court, of a receipt by Leonard Moore, claimed to be a release from all damages thereafter resulting from the maintenance of the pipe line, or as an accord and satisfaction for all subsequent damages, binding on plaintiffs and their grantor, and consequently operating as an estoppel against them or as a bar to any recovery in this action. The terms of that paper are:

"Proctor, W. Va., February 15, 1909.

Received of Hope Natural Gas Company $50, in full for all damages on any and every account caused by or arising from laying, maintaining and operating a pipe line which was laid on my lands in Proctor district, Wetzel county, West Virginia. LEONARD MOORE."

Giving the receipt the effect ascribed, as construed by defendant, the question arises whether plaintiffs are estopped or barred from recovery for injuries to their lands occurring subsequent to its date. The answer to this question involves the proper construction of that paper. The important terms to be noticed are the words "caused by or arising from laying, maintaining and operating a pipe line". The language quoted has a past and future significance it is true, and, when casually examined, it seems to embrace injuries done and injuries anticipated. And if that is the true construction, the receipt would operate alike against both Leonard Moore and his grantees, and bar recovery. For the doctrine seems to be well settled that whatever estops the grantor will also operate as an estoppel against those holding under him. *Summerfield* v. *White,* 54 W. Va. 311; *Reynolds* v. *Cook,* 83 Va. 817.

But is the receipt susceptible of that construction? "Caused" is a perfect participle, and imports acts already done. The receipt, therefore, would cover past injuries to the land. Of that no doubt can exist. "Arising", while having a progressive and prospective meaning in some circumstances, usually signifies the present. Most frequently, indeed generally, it denotes immediate present, and only occasionally implies future events or occurrences. When we speak of "fog rising from the river", or "clouds rising in the east", the expressions import an instant progressive occurrence, and not one that may arise in the future, however probable it may be. Though the present participle may, it seldom does, include a future event of a similar nature. It does not import futurity. So that the construction contended for by defendant necessarily requires the insertion of "heretofore" before "caused" and "hereafter" before "arising".

Can it reasonably be said the parties contemplated the implication now sought to be drawn from the language of the receipt? The established rules require that all written instruments be construed in view of the purposes contemplated by the parties when executing them. Did they intend the receipt to be in full settlement of all claims for injuries theretofore and thereafter caused by or arising from any act performed or to be performed by defendant under and by virtue

of the easement? The sanction of that construction might effectively operate as a substitution of an agreement not assented to or contemplated by both of them. But, in our view of this case, an expression of an opinion as to the proper construction to be given to that paper is not essential. For, whether the receipt was intended to and in fact does absolve defendant from liability for the natural and unavoidable consequences of an act carefully and prudently done by virtue of the grant, it would not have that effect or so operate if such acts were carelessly and negligently performed. From such acts, though occasioned while he is engaged in the exercise of a lawful granted right, a defendant can not by contract exonerate himself. *Maslin* v. *Railroad Co.,* 14 W. Va. 180; *Brown* v. *Express Co.,* 15 W. Va. 812; *Berry* v. *Railroad Co.,* 44 W. Va. 545; *Johnson* v. *Railroad Co.,* 86 Va. 975; *Shannon* v. *Railroad Co.,* 104 Va. 645.

For, virtually, the charge informally made by the process requiring defendant to answer the complaint made by plaintiffs, and their statement of the account sued on and the evidence offered in its support, is that the excavations were negligently made, resulting in injury to crops and fences which could have been avoided by exercise of ordinary care and prudence. Effectually, such is the charge made against defendant. Although the proof offered in support of the claim for damages so caused to fences by reason of the excavations is meager and inconclusive, it nevertheless tends to show that defendant's employees readily could have avoided such injury if they had exercised such prudence and care. In any event, it does show lack of a disposition on their part to make any effort to restore the fencing approximately to the condition it was in prior to the making of the excavations—a duty necessarily devolving upon defendant under any construction of the contract introduced by it on the trial of the case to show the lawfulness of its entry on the lands and the extent of the liability thereby imposed, except as to acts negligently or wantonly done.

Treating the receipt as an accord and satisfaction, it would operate as a bar only in regard to matters contemplated by the agreement. *Railway Co.* v. *Hunt,* 25 Ill. App. 98; *Bates* v. *Cobb,* 5 Bosw. (N. Y.) 29; *Littell* v. *Ellison,* 17 N. Y. S.

294; *Rowell* v. *Marcy*, 47 Vt. 627; *Scully* v. *Delamater*, 28 Fed. 114. Whether it does so operate must be determined from the intention of the parties as gathered from the agreement, and not from matters *dehors* the writing. *Jordan* v. *McDonnell*, 151 Ala. 279; *Tryan* v. *Hart*, 2 Conn. 120; *Crum* v. *Sawyer*, 132 Ill. 443; *Cotton* v. *Field*, 131 Ill. 398. But extrinsic evidence is admissible to show the circumstances surrounding the parties at the date of the agreement, the nature of the transaction to which it was designed to apply, keeping in view the particular purposes to be effected, and giving to the terms employed their ordinary and usual meaning. *Rowe* v. *Rand*, 111 Ind. 206.

A more comprehensive release, one specifically stating the circumstances causing the injuries and the extent of the damages inflicted, was involved in *Railway Co.* v. *Dashiell*, 198 U. S. 521; and, though it purported to exonerate the carrier from all "claims and demands of every kind whatever for or on account of the injuries sustained in the manner and on the occasion aforesaid," the court held the release was not a discharge from liability for disabilities of a permanent nature subsequently developing and not then anticipated, though due to the same cause of action. An accord and satisfaction does not operate as a bar as to matters unknown to the parties at the time of its execution. To give it that effect might work manifest injustice, and impose upon the releasor an instrument to which he did not assent. 34 Cyc. 1092; *Railway Co.* v. *Artist*, 60 Fed. 365; *Railway Co.* v. *Dashiell, supra.*

The assumption that the parties to the release here in issue intended to bar recovery upon a new and subsequent cause of action is not justified by the language used by them, or inferrable from the terms of the receipt. Hence, its exclusion was not erroneous.

Nor was the jury erroneously directed not to consider the arbitration clause of the easement contract; nor did the court err in refusing to admit the evidence offered to show selection of arbitrators thereunder. When not expressly making an agreement to arbitrate a condition precluding right to sue on a cause of action, courts are not ousted of their jurisdiction. *Kinney* v. *Relief Association*, 35 W. Va. 385.

Plaintiffs failed to establish by proof any real basis for their claim of damages to crops, justifying the only instruction asked and given on their motion, over defendant's objection, saying "growing grass, such as was on the lands of the plaintiffs at the time said bell holes were dug, is considered a growing crop". It may first be observed that, while the right of way granted provided for damages to "crops", the instruction interpolates the word "growing", thus superadding a meaning not contemplated, at least not expressed, by the parties, and tending to impose an increased liability on defendant. The case was tried apparently upon the erroneous theory that the measure of plaintiffs' damages to the sod injured or destroyed was the expense to be incurred in the restoration of the sod to its former condition, under the assumption that grass growing from the sod was a crop within the usually accepted meaning of that term. But the lexicographical definition of "crops" comprehends only such growths as are produced from the soil and severed or cropped by human instrumentalities, and not grass growing on depastured lands. The term usually signifies, and is generally understood to mean, something *cropped,* or severed from land, and garnered or saved by manual labor; as cereals and vegetables planted and cultivated, hay harvested from meadow land, corn grown and gathered in shocks, or wheat in stacks or bins, or fodder and straw in shocks or ricks. It must be assumed, then, that, at the date of the contract mentioned, the parties thereto advisedly used the word "crops" as comprehending *fructus industriales*—those periodical products planted, cultivated and saved through the aid and means of the usual human instrumentalities; or some product of the soil gathered in a single year by manual labor, and by man appropriated to his individual use and enjoyment, or under his personal superintendence and direction applied to the use and benefit of his stock (12 Cyc. 975) ; or the result of an annual planting (14 Ill. 357) ; or those due to yearly manurance and labor and essentially owing their annual existence to cultivation by man (49 Minn. 412). As given in the Standard Dictionary, and by it no doubt extracted from text writers, and approved in *Evans* v. *Hardy,* 76 Ind. 531, a "crop" means "a vegetable production of the soil, such as

grain, garden seeds and the like, which are not spontaneous but require an outlay of cost and labor in one part of the year, the recompense of, which is to arise in the shape of a crop in another part of the same year''. Although grass grows somewhat spontaneously, it does not fall within the meaning of the word crop as usually understood and applied, except when grown and maturing on meadow lands for harvesting or harvested. To that word, as so used in the contract for the right of way, can not be applied a meaning not contemplated by the parties at the date of such agreement.

Though the measure of damages for permanent injuries to real estate usually is the difference in value immediately before and after the injury was done, yet where such injury is temporary only and readily repairable, as when fencing is partially impaired, the measure is the cost of material and labor reasonably necessary to restore the damaged property approximately to its condition when injured; and for this purpose evidence of such cost is admissible as affording a fairly accurate basis for estimating compensation for the injury done. *Burk* v. *Railroad Co.,* 7 Heisk. 451. Since a fence has no intrinsic value except as an enclosure, and unless wholly destroyed as such does not materially affect the value of the enclosed lands, the cost of such restoration is a proper element to be considered by the jury in the ascertainment of damages. No more reasonable or just method can reasonably be suggested, as held by many though not by all authorities. Among the former are *Vermilya* v. *Railway Co.,* 66 Ia. 606; *Railway Co.* v. *Land Co.,* 27 Fla. 1; Sedwick on Damages §939 and Sutherland on Damages §1015 say the value of the fence is measured by the sum which will, properly expended, restore the premises to their condition before interference therewith by the defendant. Likewise, though not in the same way, do *Deimel* v. *Obert,* 20 Ill. App. 557; *Richardson* v. *McDougall,* 1 Wend. (N. Y.) 46; *Cooley* v. *Railroad Co.,* 149 Mo. 487.

For the reasons assigned, an order will be entered here reversing the judgment and remanding the case for new trial.

*Reversed, and new trial awarded.*