207 P.2d 531

**CZERNER v. KERBY et al.**

**No. 5193.**

Supreme Court of New Mexico.

June 27, 1949.

John B. Wright, Raton, for appellants.

Daniel W. Caldwell, Springer, for appellee.

COMPTON, Justice.

The question here presented is whether natural grass, straw, and stalk pastures are "crops" as contemplated in a lease agreement existing between the landlord and tenant.

Charles Wiseman, appellee's predecessor in interest, leased to appellants for agricultural purposes what is known as a "model farm" near Springer, New Mexico, containing 627.5 acres. The duration of the tenancy was five years commencing November 20, 1945, and terminating November 20, 1950. It specifically provides that either party may terminate the lease on the 20th day of November of any year by giving written notice on or before the 20th day of October prior to the effective date of termination. Appellee, with knowledge of the lease, purchased the premises from Wiseman. Thereafter, timely notice was given terminating the lease. Appellants vacated the premises November 1, 1948, and are now claiming the value of the grass, straw and stalk pastures under the "Doctrine of Emblements" or away-going crops.

The complaint, among other things, alleges that appellants wrongfully disposed of the first cutting of alfalfa grown on the premises, one-half of which belonged to appellee, and refused to account therefor. Appellants admit the lease agreement, that they sold the alfalfa and were indebted to appellee in amount of $1,478.80. By counterclaim they assert that appellee is indebted to them for labor performed and for improvements placed upon the premises by

them in amount of $667.00, and for the further sum of $800.00, the value of pasturage accruing after the termination of the lease. Issue being joined the trial court found for appellee on his complaint and for appellants on their counterclaim for labor performed in the amount of $274.00, but denied their claim for the value of the pasturage. After allowing the claim for labor, judgment was entered for appellee for $1,204.80. Appellants bring the judgment here for review.

Various errors are assigned and argued under the point that the tenant, under a tenancy will, upon termination of the tenancy by the landlord, is entitled to the crops, as well as to pastures, straw, and stalk pasture.

Regarding crops, the lease provides:

"If, at the termination of this lease, for any reason, there are *growing crops* on the farm in which the tenant has an interest, the landlord will compensate the tenant for his interest upon such basis as may be mutually agreed or determined by arbitration, or will complete the care, harvesting, and sale of such crops, deduct the expenses thereof from the returns, and will pay the tenant his proportionate share of the proceeds." (Emphasis ours.)

The farm consisted of 627.5 acres. There were 254 acres under irrigation, 360 acres of grass land, and approximately 13 acres upon which the improvements are located. When the lease terminated, November 20, 1948, the 1948 crop was completely harvested. The grain had been combined and straw left as it fell in the fields. There was then left on the premises the native grass, wheat and oat stubble, and alfalfa fields. There were no stacks of straw nor stalk fields unless appellants should classify wheat or oat stubble as such.

■ Ordinarily, grass is not considered as a growing crop, nor are straw and stalk pastures held to be crops in the sense that they may be used or removed from the premises after the termination of the lease. Particularly is this so where the straw is not in ricks or stacks. Miethke v. Pierce County, 173 Wash. 381, 23 P.2d 405; Moore v. Hope Natural Gas Co., 76 W.Va. 649, 86 S.E. 564; Smith v. Boyle, 66 Neb. 823, 92 N.W. 1018, 103 Am.St.Rep. 745; Goodwin v. Clover, 91 Minn. 438, 98 N.W. 322, 103 Am.St.Rep. 517; see also Vol. 10 Words and Phrases, Perm.Ed., p. 547; 15 Am.Jur. "Crops," Sec. 24.

In Moore v. Hope Natural Gas Co., supra [76 W.Va. 649, 86 S.E. 567], the court said:

"Plaintiffs failed to establish by proof any real basis for their claim of damages to crops, justifying the only instruction asked and given on their motion, over defendant's objection, saying, 'growing

grass, such as was on the lands of the plaintiffs at the time said bell holes were dug, is considered a growing crop.' It may first be observed that, while the right of way grant provided for damages to 'crops,' the instruction interpolates the word 'growing,' thus superadding a meaning not contemplated, at least not expressed, by the parties, and tending to impose an increased liability on defendant. The case was tried apparently upon the erroneous theory that the measure of plaintiffs' damages to the sod injured or destroyed was the expense to be incurred in the restoration of the sod to its former condition, under the assumption that grass growing from the sod was a crop within the usually accepted meaning of that term. But the lexicographical definition of 'crops' comprehends only such growths as are produced from the soil and severed or cropped by human instrumentalities, and not grass growing on depastured lands. The term usually signifies, and is generally understood to mean, something cropped or severed from land, and garnered or saved by manual labor, as cereals and vegetables planted and cultivated, hay harvested from meadow land, corn grown and gathered in shocks, or wheat in stacks or bins, or fodder and *straw in shocks or ricks.* It must be assumed, then, that at the date of the contract mentioned the parties thereto advisedly used the word 'crops' as comprehending fructus industriales, those periodical products planted, cultivated, and saved through the aid and means of the usual human instrumentalities, or some product of the soil gathered in a single year by manual labor and by man appropriated to his individual use and enjoyment, or under his personal superintendence and direction applied to the use and benefit of his stock (12 Cyc. 975) or the result of an annual planting (Reed v. Johnson, 14 Ill. 257), or those due to yearly manurance and labor and essentially owing their annual existence to cultivation by man (Sparrow v. Pond, 49 Minn. 412, 52 N.W. 36, 16 L. R.A. 103, 32 Am.St.Rep. 571). As given in the Standard Dictionary, and by it no doubt extracted from text-writers, and approved in Evans v. Hardy, 76 Ind. [527], 531, a 'crop' means 'a vegetable production of the soil, such as grain, garden seeds and the like, which are not spontaneous, but require an outlay of cost and labor in one part of the year, the recompense of which is to arise in the shape of a crop in another part of the same year.' *Although grass grows somewhat spontaneously, it does not fall within the meaning of the word 'crops' as usually understood and applied, except when grown and* maturing on meadow lands for harvesting or harvested. * * *" (Emphasis ours.)

In Miethke v. Pierce, supra [173 Wash. 381, 23 P.2d 407], in defining crops, the court said:

" 'That which is cropped, cut or gathered from a single field, or of a single kind, or in a single season or part of a season; the product of the field, whether gathered or growing; harvest.' * * * 'The word "crop" in its more general signification, means all products of the soil that are grown and raised annually and gathered during a single season. In this sense the term includes both fructus industriales and fructus naturales. The word is also used, however, in a more restricted sense, as synonymous with fructus industriales or emblements. Everything produced from the earth by annual planting, cultivation and labor.' "

■ Whether such products are crops as urged by appellants is unimportant. The intention of the parties as expressed in the lease is controlling. We look to the lease itself to see what the agreement is. Appellants contend that the purpose of the lease was to raise and pasture livestock. The lease form is a "Flexible Farm Lease" as used by the Department of Agriculture. It contains provisions applicable to the particular agreement but many of its provisions remain incomplete. One of such incomplete provisions, pertinent here, reads as follows:

"(d) It is agreed that the tenant, or the parties jointly, may engage in the small-scale commercial production of livestock or livestock products on the farm. Such production will be under the following special arrangement, if any (nature and extent, respective contributions and shares, use of pastures and crops, etc.) ———". (Emphasis ours)

It is seen that appellants were not too much concerned in small-scale commercial production of livestock. There appear no special arrangements regarding the production of cattle or the use of the pastures. Elsewhere the lease merely provides that appellants may use the straw and stalk pasture. It is true that appellants pastured some thirty-five head of cattle in the summer and a larger number in the fall, but it is obvious that their primary interest was the production of grain and alfalfa. It also appears that they voluntarily vacated the premises many days prior to its expiration thereby evidencing an intention of abandonment. It is also noticeable that the lease refers to the disposition of the growing crops remaining at the termination of the lease, and there were none. All crops had matured long prior thereto.

The evidence further reveals that when appellants took possession November 9, 1945, there was about the same area in pastures as when they vacated the premises. So, they received at the commencement of the lease the benefits for which they are now contending. Their position is untenable when viewed in the light of the contract.

Appellants strongly rely upon Weddle v. Parrish, 135 Or. 545, 295 P. 454 to support the proposition that they are entitled to the benefit of the pastures. There the lease in question was principally a grass lease intended to be used for late pasturing of sheep. The grass was the crop involved and the court held, and properly so, that under such conditions appellee was entitled to the use of the demised premises after the termination of the lease.

It is our conclusion that perennial grass, the straw, and stalk pastures are not crops in the sense used by the parties.

The judgment will be affirmed and it is so ordered.

BRICE, C. J., and LUJAN, SADLER, and McGHEE, JJ., concur.