APPALACHIAN POWER COMPANY, *a Corporation*

*v.*

DON MORRISON *and* DIXIE MORRISON

APPALACHIAN POWER COMPANY, *A Corporation*

*v.*

LARRY R. STOLLINGS
*and*
APPALACHIAN POWER COMPANY, *a Corporation*

*v.*

ASA LEGRAND

(No. 12752)

Submitted January 22, 1969.    Decided February 25, 1969.

*E. Glenn Robinson, Thomas C. Damewood, J. B. Meek, E. Dennis White, Jr.,* for appellant.

*Robert M. Levy,* for appellees.

CALHOUN, JUDGE:

This case is before the Court on appeal from the Circuit Court of Cabell County which, by an order entered on January 25, 1968, rendered judgment in favor of Appalachian Power Company, a corporation, the plaintiff and appellant, against the defendants in each of three separate actions which, by stipulation and agreement of counsel and by consent of the court, were consolidated for trial and tried by the court in lieu of a jury.

The Appalachian Power Company, which hereafter in this opinion may be referred to merely as Appalachian or as the plaintiff, is a public service corporation engaged in the production of electric power and in the distribution thereof to consumers in an area which includes Cabell County. In each of the three actions, Appalachian seeks recovery of damages for the destruction of one of the wooden utility poles owned and used by it to support electric transmission lines. In each instance, the pole was destroyed because of having been struck by an automobile. It was stipulated that none of the three poles had any salvage value after it was struck.

In one instance, the automobile was owned by Don Morrison and was being operated by Dixie Morrison, both of whom were joined as defendants in one of the three actions. One action involved an automobile which was owned and operated by Larry R. Stollings at the time of the accident. He is the sole defendant in that action. In the third action, Asa LeGrand, the sole defendant, was the owner and operator of the automobile at the time it struck the utility pole.

It was stipulated by counsel that in each of the three cases liability was admitted and that the only issue for the trial court to decide in each case was the proper amount of damages to be awarded for the destruction of the utility pole.

Appalachian has appealed to this Court on the ground that the amount of damages awarded in each case is inadequate and on the ground that the trial court applied improper principles of law in determining the amount of damages awarded. It is the contention of the plaintiff that it is entitled to recover in each action the reasonable cost of repairs which were rendered necessary by the negligent act of the defendant in striking the utility pole while operating an automobile. The defendants contend that the amount of damages properly recoverable in each case should involve only damage caused to the utility pole and its immediate attachments or appurtenances; that the new pole installed has greater value to the plaintiff than the

used pole which was destroyed; and that the trial court, in rendering judgment in each case, properly reduced the plaintiff's cost of repairing the damage to its electric power distribution system by an amount determined by the court as a proper measure of depreciation based on the length of time the used pole had been in service and a "life expectancy" of forty years for a new pole.

In the LeGrand case, the amount of damages asserted by the plaintiff aggregated $1,064.03. In its opinion, announced orally from the bench, and in its findings of fact embodied in an order entered on January 25, 1968, the trial court stated: "The court takes and accepts for full value the total cost of restoration of a new pole in the place of the old one that was negligently destroyed, and finds the sum under the evidence, and uncontradicted, to be $1,064.03." This consisted of the following several items: material, $97.95; supervision and engineering, $138.78; labor, $697.36; and transportation, $129.94. The court found from the uncontradicted evidence that the damage, consisting of several items similar in character to those in the LeGrand case, was $254.17 in the Stollings case and $127.84 in the Morrison case. The court found further from the evidence that the pole involved in the LeGrand case had been in use thirty years prior to the date of its destruction; that the pole involved in the Stollings case had been in use ten years; and that the pole involved in the Morrison case had been in use twenty-two years.

In adopting forty years as the reasonable or average useful life of a pole such as the three involved in this case, the trial court made the following statement: "So the court, in the absence of anything better, is simply taking, * * * the *arbitrary* figure of 2½ percent depreciation per year." (Italics supplied.) We find no basis in the record for the action of the trial court in finding that the reasonable or average useful life of such a utility pole is forty years. We conclude, therefore, that the testimony furnishes no basis for depreciating the plaintiff's uncontradicted items of damages in the three cases, or any portion thereof, at the rate of two and one-half percent a year based on the

length of time the three several poles had been installed and in use prior to the dates on which they were destroyed.

In accordance with the method of depreciation adopted by the trial court, the LeGrand claim was reduced from $1,064.03 to $266.01; the Stollings claim was reduced from $254.17 to $190.63; the claim in the Morrison case was reduced from $127.84 to $57.53; and, in each case, the trial court awarded judgment in favor of Appalachian for the lesser or depreciated sum. We are of the opinion that the action of the trial court in thus reducing the amounts of the plaintiff's several claims was unwarranted by the evidence and also by pertinent principles of law.

It was agreed by counsel, in the oral argument, that their research had failed to disclose a prior decision of this Court directly in point on the question of the correct measure of damages in cases such as the three involved in this appeal.

Basically, counsel for the defendants contends that, in each of the three cases, the new pole installed is more valuable to the plaintiff than was the used pole immediately before it was destroyed; that, to this extent, the plaintiff's electric power distribution system has been rendered more valuable; and that, therefore, the plaintiff's claim in each case should be reduced in amount on a basis of depreciation based on the length of time the replaced pole had been in service prior to the date of its destruction. Typical of authorities relied upon by counsel in support of that contention is *Hearn* v. *McDonald*, 69 W. Va. 435, 71 S. E. 568, the sole syllabus point of that case being as follows: "In an action for destruction of a roof of a house, the measure of damages is the value of the roof, that is, what it would cost to replace it new, less an allowance for depreciation from use, age or like cause."

On the other hand, counsel for the plaintiff contend that the plaintiff public service corporation is entitled to recover in each action all reasonable expenditures necessarily incurred by it as a proximate result of the negligent act of the defendant driver, less the reasonable value of any

salvageable materials, if any, in the absence of a showing that the plaintiff has received some demonstrable or measurable benefit to its electric power distribution system as a consequence of the repairs made by it. Counsel for the plaintiff contend additionally that each new pole, when installed, became an integral part of the plaintiff's entire electric power distribution system and lost its identity and its market value as a separate item of property; and that the installation of the new pole does not cause the plaintiff's service to its consumers to be improved, can form no basis for reduction of its overall cost of operation, and affords no basis for requesting an increase in rates chargeable to the consumers. Counsel for the plaintiff contend further that, on the basis of the trial court's reasoning, if a pole which had been installed and in use for forty-one years were negligently destroyed by a motorist, the plaintiff would be entitled to recover nothing as damages from the wrongdoer, even if the plaintiff, as in the LeGrand case, were required to expend $1,064.03 to repair the damage and to restore service to its consumers.

While conceding an inability to find, among prior decisions of this Court, a precedent for the precise factual situations here involved, counsel for the plaintiff urge, as persuasively analogous, the case of *Moore* v. *Hope Natural Gas Co.*, 76 W. Va. 649, 86 S. E. 564, which involved an action for recovery for damage caused to growing crops and to fences. The fifth point of the syllabus by the Court in that case, as it relates to the fences, is as follows: "Damages * * * to fences, when readily repairable, is measured by the cost of material and labor, which will, when properly applied, restore the premises to their condition before the interference."

The only cases directly in point from other jurisdictions which have been disclosed by research of counsel for the respective parties support, in general, the contention made by counsel for the plaintiff and refute the position asserted by counsel for the defendants in this Court. *New Jersey Power & Light Co.* v. *Mabee*, 41 N. J. 439, 197 A. 2d 194, involved an action by an electric power company to recover

damages from the owner of an automobile which struck an electric power transmission pole and damaged it so that it was necessary to replace it with a new pole. The sole question presented to the appellate court for decision was the proper measure of damages. Contentions of the respective parties were similar to those urged in behalf of the parties in this case. The sum actually expended by the plaintiff in repairing the damage was $1,317.94. The trial court, sitting in lieu of a jury, awarded judgment for $850. Upon appeal by all parties, the court upheld the contention of the plaintiff, reversed the judgment and remanded the case with directions to the trial court to enter judgment for the plaintiff in the sum of $1,317.94. A part of the reasoning of the appellate court is embodied in the following language quoted from its opinion:

"If the life of every pole were 36 years and if it were clear that each pole would be replaced at the end of that period defendants could well urge that a new pole clearly conferred a benefit beyond the amount of the damage done. The difficulty is that there is no discernible life expectancy of an individual pole and that although the period of 36 years is used for accounting purposes, the pole that was destroyed might well have served for a much longer period and the new pole may last for but a few years. Moreover, because of changes in circumstances or in technology, it cannot be known whether the pole would ever have been replaced. In short, at least upon the record before us, we cannot say with reasonable assurance that the installation of a new pole did more than remedy the wrong done. An injured party should not be required to lay out money, as defendants' approach would require, upon a questionable assumption that one day its worth will be recaptured."

*Carolina Power & Light Company* v. *Paul*, 261 N. C. 710, 136 S. E. 2d 103, involved an action by an electric power company against a defendant who lost control of his automobile while on a public highway. The automobile thereupon crashed into one of the plaintiff's power poles, destroying the pole, the transformer attached to it, a part of the transmission line and a guy wire. The plaintiff made all necessary repairs at a cost of $182.65. On appeal,

the court affirmed the action of the trial court in rendering judgment in favor of the plaintiff for the full amount of the cost of repairs, less the salvage value of the replaced parts. In summarizing its decision, the court in its opinion included the following language: "The cost of repairs furnishes the more satisfactory test by which to determine the plaintiff's damages; however, the defendant was properly given credit for the salvage value of the replaced parts. The record fails to show the repairs perceptibly increased the value of the plaintiff's property."

*Polk* v. *Oklahoma Gas and Electric Company,* (Okl.), 410 P. 2d 547, involved an action by an electric public service company for damage caused to one of its transmission line poles by being struck by an automobile while it was being operated by the defendant. The case was tried by the court in lieu of a jury. The plaintiff proved that the cost of repairing the damage amounted to $390.42, which sum included the cost of a pole and other material, labor, and transportation of men and material to the scene of the accident. The trial court reduced the total cost of repair by $23.04 as "the amortized loss of the pole and other material" and entered judgment in favor of the plaintiff in the sum of $369.37. On appeal, the defendant contended that the court erred in including in the award of damages the sum of $92.53 as an overhead expense on the item of labor cost, which included "fringe benefits on employee's salaries and other administrative costs"; and that the remaining balance of $297.89 should have been further depreciated in the sum of $129.08, leaving a balance of $168.81 properly due on the plaintiff's claim. In affirming the action of the trial court, the appellate court, in the first point of the syllabus by the court, stated:

> "Electric distribution corporation whole electric light pole is broken and damaged by the negligence of another is entitled to recover its actual loss in wages and material incurred in removing the damaged pole and to be restored to the same position it was in prior to the accident, and is not restricted to recovery of the depreciated value of the pole, nor to depreciated value of pole plus amount of

expenses incurred, depreciated to the same extent as the depreciated value of the pole."

Other cases substantially in accord with the North Carolina, Oklahoma and New Jersey cases previously cited include the following: *Gulf States Utilities Company* v. *Faucheaux*, (La. App.), 181 So. 2d 404; *Middle Tennessee Electric Membership Corporation* v. *Barrett*, (Tenn. App.), 410 S. W. 2d 914; *The Hartford Electric Light Company* v. *Beard*, 3 Conn. Cir. 323, 213 A. 2d 536; *Warren Telephone Co.* v. *Hakala*, 105 Ohio App. 459, 152 N. E. 2d 718; *Wisconsin Telephone Co.* v. *Reynolds*, 2 Wisc. 2d 649, 87 N. W. 2d 285 (underground telephone cable).

For reasons stated in this opinion, the judgments of the Circuit Court of Cabell County are reversed and the case is remanded to that court with directions to render judgments in favor of Appalachian Power Company against Don Morrison and Dixie Morrison for the sum of $127.84, against Larry R. Stollings for the sum of $254.17 and against Asa LeGrand for the sum of $1,064.03, plus interest and costs according to law in each of the three consolidated actions.

*Reversed and remanded with directions.*